Stacy and another vs. Milwaukee, Lake Shore & Western R. Co.

STACY and another, Respondents, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Appellant.

*September 21 — October 9, 1888.*

*(1) Compulsory reference: Tort action.  (2) Evidence: Impeachment of witness.*

1. An action sounding purely in tort cannot be referred, under sec. 2864, R. S., without the written consent of both parties.
2. In an action for the negligent burning of plaintiffs' property they claimed that the fire originated from sparks or coals from a locomotive on defendant's track *east* of where the fire broke out, and the theory of the defense was that it was caused by sparks from burning brush on a farm to the *southeast.* One of plaintiffs' witness, who had testified that the wind was from the east or north of east all day, was asked on cross-examination if he had not stated that if the wind had not changed from the southeast most of the town would have burned. The question was ruled out. *Held,* error.

APPEAL from the Circuit Court for *Winnebago* County. Action to recover damages for the burning of property through the negligence of defendant's employees. The material facts are stated in the opinion. There was a special verdict to the effect (1) that on the day of the fire the defendant's locomotive No. 88 went upon the west side-track as far north as the plaintiffs' tramway leading east from the mill; (2) that said locomotive was in good condition, properly constructed, and provided with all the usual appliances for the prevention of the escape of fire in use at the time of the fire; (3) that the fire which started in the second lumber pile south of the main tramway originated from sparks or coals from said locomotive; (4) that the defendant was guilty of negligence which caused the fire, and (5) that such negligence consisted in allowing coals and cinders to escape from said engine on the west side-track in close proximity to lumber piles and other combusti-

ble material; (6) that the plaintiffs were not guilty of a want of ordinary care and prudence which contributed to the starting of the fire in said pile of lumber; (7) that it was reasonable and natural to expect, under all the circumstances, that the fire caused by such coals or cinders from the locomotive would cause the destruction of the plaintiffs' mill and property; (8) that after the fire started the plaintiffs exercised ordinary care and diligence in reference to protecting their stock of goods against threatened destruction by fire; (9) that the fair cash value of the plaintiffs' property destroyed by said fire was $7,365.04. The jury also assessed the plaintiffs' damages at $7,579.84.

A motion by the defendant to set aside the verdict and for a new trial was denied. Both parties moved for judgment on the verdict. The plaintiffs' motion was granted, and from the judgment entered accordingly the defendant appealed.

*A. L. Cary* and *Charles Barber,* for the appellant, contended, *inter alia,* that a reference should have been granted. *Monitor Iron Works v. Ketchum,* 47 Wis. 177; *Dane Co. v. Dunning,* 20 id. 210; *Cairns v. O'Bleness,* 40 id. 469; *Mead v. Walker,* 17 id. 189; *Gillbank v. Stephenson,* 31 id. 592; *Carpenter v. Shepardson,* 43 id. 406; *U. S. Rolling Stock Co. v. Johnston,* 67 id. 182; *Littlejohn v. Regents,* 71 id. 437. It was error to exclude the testimony of plaintiffs' witness Nash as to his statement out of court that if the wind had not changed from the southeast the whole town would have burned. *Martin v. Farnham,* 25 N. H. 195; *Mimms v. State,* 16 Ohio St. 224; *Beaubien v. Cicotte,* 12 Mich. 459; *Nuckols' Adm'r v. Jones,* 8 Gratt. 267; *Warder v. Fisher,* 48 Wis. 338, 344; *Kaime v. Omro,* 49 id. 371; Rapalje on Witnesses, secs. 209, 247, 248, and cases cited.

For the respondents there was a brief by *Charles W. Felker,* and oral argument by *Mr. Felker* and *Gabe Bouck.*

COLE, C. J. This action is brought to recover the amount claimed to be due the plaintiffs by reason of the burning of certain property through the alleged negligence of the defendant company. Some of the property destroyed was a general stock of merchandise such as is usually kept in country stores, consisting of a large number of items, and quite a number of other kinds of property. The defendant claimed that the trial of the issues would involve the examination of a long account, and moved that the cause be referred to a referee to hear and decide the same. The court below held that the action could not be referred without the written consent of the parties, and denied the motion. This ruling is assigned for error, but we think the court was clearly right in the view it took of the statute. The action is plainly one in tort. The vital and substantial issue is the alleged negligence of the defendant which caused the injury complained of. Such an issue is peculiarly one for a jury; and we do not think that the legislature intended there should be a compulsory reference to try such an issue, even if it had the power to deprive a party of the right of submitting it to a jury. The constitution declares that the right of trial by jury shall remain inviolate; that is, it should remain as when the constitution was adopted. Since the decision in *Norton v. Rooker*, 1 Pin. 195, which arose under the territorial statute, it has not been supposed there could be a compulsory reference in an action sounding purely in tort. Counsel have cited the decisions of this court where the question of compulsory reference has been discussed, but there is no decision which would sanction it in the case before us. In *Littlejohn v. Regents*, 71 Wis. 437, one of the most recent cases, the question is alluded to, whether there could be a compulsory reference in an action of tort, but the point was left undecided. Under the circumstances, nothing but the clearest and most unequivocal language in the statute would warrant the court in directing a compul-

sory reference in an action of this nature. Whether the legislature could authorize it is a question which will doubtless be decided when it shall arise. In this case the value of the merchandise, lumber, and other property burned was only collaterally involved as affecting the measure of damages. But the real gist of the action is negligence, which is the ground upon which the defendant's liability is rested. We therefore conclude that there was no error in refusing to direct a compulsory reference.

The view which we have taken of the case relieves us from the necessity of noticing in detail all the errors assigned; but we cannot withhold the remark that the practice of the learned counsel for the defendant, in assigning seventy-five distinct errors, is one not to be commended. Such an assignment of errors really affords no useful information to the opposite counsel of the points which will be relied on for a reversal of the judgment. Counsel might as well make a general reference to the state library for authorities to sustain a proposition of law. Not without reason do the plaintiffs' counsel insist that the practice adopted in that regard is vicious and one which should not be tolerated.

Now, before coming to the error which we think must work a reversal of the judgment, it will be necessary to state a few facts in order to make our remarks intelligible. The plaintiffs were operating a steam saw-mill and stave-factory at Birnamwood, a small station on the line of defendant's road. The road at that point runs about north and south. The mill-yard was on the west side of the track, and was made-ground; that is, it was made of slabs, sawdust, and other refuse material from the mill. South of the mill, and almost at right angles with the track, was a public highway, leading into the country, and known as the " State Road." At the station there were two side-tracks, one upon the east and the other upon the west side of the main track.

The distance from the center of the main track to the center of the west side-track was about fifteen feet, opposite the place where the fire first broke out. The saw-mill in question was located about eighty-five feet westerly of the west side-track, and a tramway of the width of the mill ran from the east end thereof down to within about six feet of the west side-track. A narrow tramway about six feet high and seven feet wide extended from the state road, on the south, up to Birch street, on the north, along and parallel with the west side-track, and distant therefrom about six feet. The fire occurred on the 13th of May, and it was claimed by the plaintiffs that it originated from sparks and coals which escaped from the defendant's locomotive No. 88, while passing with a freight train or picking up cars at the station, going south that afternoon. It was a very dry time, as all the witnesses say, and a strong wind was blowing that day. The witnesses differ as to the exact direction of the wind; the plaintiffs' witnesses stating that it blew from the east or a little north of east; the defendant's witnesses stating that it blew from the southeast. A farmer who owned land south of the state road and east of the railroad was engaged that day in burning brush or stumps for the purpose of clearing his land. The theory of the defense was that in all probability the fire in the plaintiffs' lumber piles had its origin or was communicated from the fire on the farmer's land, which fire was about twenty rods distant in a southeasterly direction from the point where the fire broke out in the lumber pile.

One of the most material and important witnesses of the plaintiffs was Mr. Nash, who was about the mill that day having lumber sawed, and who was one of the first to discover the fire. He testified that when he heard the alarm he was near the edger in the mill, facing the north; that he turned directly around, and saw a volume of smoke coming out of the nearest lumber pile to the mill. This pile of lumber was

on the south and west side of the tramway that ran along the railroad track. He says he went down the mill tramway facing the south, onto the other tramway, to discover where the fire was. He discovered, by looking between the tramway and the piles of lumber, a place that was burning in the sawdust, in very nearly the center of the front edge of the first pile. The fire was in the foundation sticks, not blazing, but smoldering in the sawdust, two feet long, and had spread about a foot in width. He attempted to kick it out, but could not. He then attempted to get out of this position, and, as he straightened up, he saw a fire in the center of the pile, the back end of it. It was a large blaze. There were two cars standing on the side-track at this place, which were moved away. After these cars were run off, he saw cinders and coals in a smoking condition between the rails on the side-track. This pile of cinders and coals extended nearly across the width of the track, and was eighteen or twenty inches wide, and two or three inches deep. He saw no live coals in this pile, but the cinders were smoking. He said the wind was blowing strong all day from the east, or a little north of east. On his cross-examination he was asked if he did not state to Bartlett — a conductor of a train which came to Birnamwood after the fire — that if the wind had not changed from the southeast the most of the town would have burned. This question was objected to and ruled out. We think the question was proper, and should have been answered. If Nash made that statement to Bartlett it would tend to discredit his testimony that "the wind had been in the east all day." It was legitimate impeaching testimony. Other questions were asked this witness as to declarations he made about the fire in his conversation with Bartlett, which were objected to and excluded. It is said by plaintiffs' counsel that this testimony was properly excluded, because it did not relate to the subject matter concerning which the witness

had testified in chief, and because it called for the opinion
of the witness as to the origin of the fire. We are not clear
but the testimony was objectionable for these reasons. But
the question asked and excluded, to which we have referred,
was free from any such objection. It is elementary law
that a witness may be impeached or discredited by proof
that he has made statements out of court on the same sub-
ject contrary to what he swears on the trial; and, consider-
ing the fire on the Roundhamer lot, and the probability
that that could have set fire to plaintiff's lumber, the di-
rection of the wind was a most material and vital fact.
The witness had said more than once in his testimony that
the wind was blowing strong from the east all day. If he
said to Bartlett what is implied in the question, that if the
wind had not changed from the southeast most of the town
would have been burned, it directly contradicted the evi-
dence he had given in chief. We therefore feel constrained
to reverse the judgment because of the exclusion of this
material testimony.

The case is a very close one upon the evidence. The
cause or origin of the fire is a matter left in great uncer-
tainty. The jury found that it originated from sparks or
coals escaping from engine No. 88, on the west side-track,
in close proximity to the lumber piles and other combusti-
ble material, and that the defendant's negligence caused the
fire. We believe Mr. Nash was the only witness who testi-
fied to seeing coals and smoking cinders at that place. Pre-
sumably his testimony had great, perhaps decisive, weight
with the jury. Anything calculated to discredit or impeach
his testimony was very important and material to the issue.
On the other side it is said that the finding that the defend-
ant was guilty of negligence, and that coals and cinders
escaped from engine No. 88, is entirely unsupported by the
evidence. But we think there was testimony from which

the jury might find that the engine was on the west side-track, switching and moving cars, shortly before the fire. It is certainly true that the evidence on that point is in direct conflict, but the credibility of the witnesses who swore to these conflicting statements was a matter exclusively for the jury to pass upon. The evidence as to the negligence of the defendant is not so clear and satisfactory that we can presume the jury would have found as they did upon that question had the impeaching testimony offered been received. And its importance becomes the more manifest from the fact that the jury in all probability based their finding upon Mr. Nash's testimony; for the specific act of negligence found is in allowing coals and cinders to escape · from the engine on the west side-track, in close proximity to the lumber piles and other combustible materials. There was no trace of fire between the west rail of the side-track and the lumber pile where the fire was first discovered, although the space was covered with inflammable material. The reasonable and natural inference from the testimony as to the origin of the fire is that it was caused by some spark or live coal being carried from some source by the wind, and lodging in the dry material on and about the lumber pile. But, however this may be, the question asked the witness was material and proper, and should have been answered.

The charge of the circuit court is criticised on some points, but we shall not dwell upon it, because the proof may be different on another trial and call for a different charge applicable to the facts. We observe that what is said in the charge about the jury's considering whether or not combustible material was lying along and near the track of the railroad was evidently intended to be applicable to the degree of care which the servants of the company were bound to exercise, in view of that condition of things,

having regard to the dry time and wind prevailing. It might call for the exercise of greater care and prudence in the operation of the train if such things existed.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.