STATE EX REL. HUSTISFORD LIGHT, POWER & MANUFAC-
TURING COMPANY, Petitioner, vs. GRIMM, Circuit
Judge, and another, Respondents.

*January 15—June 20, 1932.*

For the petitioner there were briefs by *George Hartman* of Juneau and *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondents there were briefs by *Schubring, Ryan, Clarke & Petersen* of Madison and *A. W. Lueck* of Beaver Dam, and oral argument by *Mr. Lueck* and *Mr. William Ryan.*

WICKHEM, J. Respondent first contends that the instant case is not a proper one for the exercise of the superintend-

ing power of this court, for several reasons. While deny-
ing that error was committed in ordering a compulsory
reference, the gist of respondent's contention is that the
most that could be claimed is that the order for reference is
erroneous, and that the superintending power should not be
permitted to serve the office of an appeal or writ of error.
The order for reference is not appealable, and it is con-
tended that for this court to review such an order under its
superintending power will be virtually to make the order
appealable in a situation where the remedy by appeal from
the final judgment is not inadequate. It is claimed that this
court should not intervene, thereby suspending the trial of
a cause, in order to determine the correctness of interlocu-
tory rulings, which may be reviewed upon appeal from final
judgment, and that to do so will disorganize the judicial
process in the lower courts, impair the dignity and independ-
ence of the lower courts, and the public confidence in them.
To this petitioner replies that the error complained of is
something more than an ordinary error in that it consists
of a denial to defendant of its right of jury trial, and further
that the order complained of, if erroneous, as it is contended
to be, will necessarily impose great hardship upon petitioner,
in that it will compel petitioner in advance of a ruling by this
court to submit to a long and expensive reference, thus ren-
dering the appeal inadequate. It is contended that super-
intending power should be exercised in cases where a serious
error will result in hardship so great as to make the appeal
inadequate.

These contentions raise an issue of great importance. On
the one hand, it is evident that this court cannot, without
causing the disorganization and breakdown of the judicial
machinery of the state, permit trials to be suspended in
every case where error on the part of the trial court is
claimed, while it determines the propriety of the ruling. On
the other hand, great burdens in the form of expense and
delay, and amounting to a denial of justice, may occasion-

ally be imposed upon parties should this court take the position that its superintending power will never be exercised to review the interlocutory ruling of a trial court unless the error is jurisdictional in character.

It hardly needs to be repeated that the question presented is one of judicial policy rather than one relating to the power of this court. It must be regarded as settled that by the constitutional grant of a "general superintending control over all inferior courts," this court was endowed with a separate and independent jurisdiction, which enables and requires it, in a proper case, to control the course of ordinary litigation in such inferior courts. *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 612, 79 N. W. 1081; *State ex rel. Fourth Nat. Bank v. Johnson,* 105 Wis. 164, 83 N. W. 320; *State ex rel. Meggett v. O'Neill,* 104 Wis. 227, 80 N. W. 447; *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 82 N. W. 158; *State ex rel. Tewalt v. Pollard,* 112 Wis. 232, 87 N. W. 1107.

It is further established that the superintending power of this court will not be used lightly. This policy has been variously expressed. It will not be exercised where the remedy by appeal or writ of error is adequate; it will not be permitted to perform the office of an appeal; it will only be used to prevent irreparable mischief. *State ex rel. Meggett v. O'Neill, supra; State ex rel. Fourth Nat. Bank v. Johnson, supra; State ex rel. Milwaukee v. Ludwig, supra; State ex rel. Tewalt v. Pollard, supra; State ex rel. Umbreit v. Helms,* 136 Wis. 432, 118 N. W. 158; *Petition of Pierce-Arrow Motor Car Co.* 143 Wis. 282, 127 N. W. 998; *State ex rel. Southern C. Co. v. Circuit Court,* 187 Wis. 1, 203 N. W. 923. Neither the power nor the exercise of it as a matter of policy is limited to keeping the lower court within its jurisdiction or compelling it to act. It has been exercised in cases where the ruling of the lower court

was merely erroneous. *State ex rel. Fourth Nat. Bank v. Johnson, supra; State ex rel. Brownell v. McArthur,* 13 Wis. 407; *State ex rel. Spence v. Dick,* 103 Wis. 407, 79 N. W. 421.

In the event that the attempt is made to invoke the superintending power to correct an error of the trial court, it is necessary to establish that an appeal from a final judgment is inadequate, and that grave hardship will follow a refusal to exercise the power. It was said in *Petition of Pierce-Arrow Motor Car Co., supra,* that the lower court's duty must be plain—so plain that hardly more than a statement of facts is necessary to convince the legal mind as to the duty of the court. However, this court, in *Petition of Inland Steel Co.* 174 Wis. 140, 182 N. W. 917, while disavowing any intention of repudiating the *Pierce-Arrow Case,* as applied to the facts there present, expressed the opinion "that jurisdiction may properly be exercised though the duty of the court below may not be so plain as to permit of but one conclusion, if a careful consideration of all the facts shows that a valid service has not been made." Hence it is concluded that the fact that the duty of the trial court in the premises can only be determined by a careful consideration of the facts and the law applicable to the situation, is no barrier to the exercise of this power. The mere fact that the trial court's position falls within the field of reasonable debate cannot preclude the exercise of the power unless, indeed, the matter is one within the trial court's discretion.

Upon the question as to whether a compulsory reference erroneously ordered creates such a hardship as will warrant exercise of the supervisory control, no categorical answer may be given, and each case must be judged upon the facts that it presents. It must be apparent that the hardship involved in rulings of the trial court must vary according to the circumstances of each case, and that no comprehensive

ruling can be made and no further guide given than that the hardship must be so great as to render the remedy by appeal or writ of error wholly inadequate. It is our conclusion that such is the situation here.

Assuming the ruling to be erroneous, it will not merely deprive petitioner of a jury trial, but will subject it to an unusually long, expensive, and futile trial before a referee. It is considered that there is a sufficient showing of great and irreparable hardship, and that this court may, without violating its traditional policy of intervening only upon very substantial grounds, entertain the alternative writ for the purpose of considering the propriety of the ruling. This is especially true where the question involved is in substance a preliminary question, and where the trial of the cause is not interrupted by these proceedings, in the sense that it would be had the trial court commenced to take evidence in the cause. This being the court's view upon the propriety of issuing the writ, it becomes necessary to consider whether the court committed error in ordering a compulsory reference.

The power of the court to order a compulsory reference is given by sec. 270.34, Stats. This section provides that the court may direct such a reference "(1) when the trial of an issue of fact shall require the examination of a long account on either side." No question is raised, or could be raised, as to the power of the court, under this statute, in a proper situation to direct a compulsory reference. However, before that power can be exercised under the subsection referred to, it must appear that the issue of fact involves the examination of a long account. While there may be some discretion in the court as to what constitutes a long account, there is none as to what constitutes an account.

An examination of the authorities indicates that the question as to what constitutes an account has not been satis-

factorily dealt with, either by the courts or by writers upon the subject. In Poor on References, p. 15, it is stated:

"The action must involve an account, but any attempt to reconcile the conflicting decisions as to what constitutes an account is almost hopeless."

The most satisfactory definition of an account is that given in *McMaster v. Booth*, 4 How. Pr. (N. Y.) 427:

"I should define an account to be a computation or statement of debts and credits arising out of personal property bought or sold, services rendered, material furnished, and the use of property hired and returned."

It is settled that mere items of damage do not constitute an account. *Stacy v. Milwaukee, L. S. & W. R. Co.* 72 Wis. 331, 39 N. W. 532; *Andrus v. Home Ins. Co.* 73 Wis. 642, 41 N. W. 956; *Brillion Lumber Co. v. Barnard,* 131 Wis. 284, 111 N. W. 483. The exclusion of items of damage indicates that the account "implies dealings and transactions between the parties, and where the action is based upon such an account, which has to be examined and investigated in order to settle the rights of the parties, a reference can be made." *Andrus v. Home Ins. Co.* 73 Wis. 642, 41 N. W. 956. In order to warrant a compulsory reference there must be some sort of a memorandum containing the items of work, materials, or payments by either party. *Druse v. Horter,* 57 Wis. 644, 16 N. W. 14. The action, however, need not be upon the account. In *Brillion Lumber Co. v. Barnard,* 131 Wis. 284, 111 N. W. 483, the court says:

"We do not understand that in order to justify a reference the action must be strictly based on the account or for an accounting. The language of the statute clearly indicates the contrary."

The court further states:

"True, mere items of damage do not constitute an account, and likewise true there must be an account in the

proper sense, and it must be something more than a mere incidental matter. It must be a matter forming substantially the basis of the plaintiff's claim, though the action need not be on the account nor for an accounting. . . . So it is sufficient if there is a long account in the proper sense, which is directly, not merely collaterally, involved, so that it must, in the regular course of the trial, necessarily be examined as substantially the basis of the claim for a recovery."

The element of mutuality in accounts is not a prerequisite. *Chicago & N. W. R. Co. v. Faist,* 87 Wis. 360, 58 N. W. 744. In *Hossack v. Heyerdahl,* 38 N. Y. Super. Ct. (6 J. & S.) 391, where the bill of particulars contained a list of items of service exclusively performed for defendant, the motion for reference was granted, the court saying:

"However correct the proposition of the learned counsel for the appellant may be, that an account as known by the law is not an *ex parte* enumeration of items, but a statement of dealings having a recognized mutual or reciprocal character, yet the practice is not to apply their strict definition to the words of the Code, but to consider that the Code intended that whatever presents the same kind of difficulties as a strict account for the action of a jury should be sent to a referee."

It is the general rule that the examination of a long account does not mean the examination of it to ascertain the result or effect of it, but the proof by testimony of the correctness of the items composing it. *Cassidy v. McFarland,* 139 N. Y. 201, 206, 34 N. E. 893. While in some jurisdictions there is an express statutory requirement that the reference shall not require the decision of difficult questions of law, the Wisconsin statute contains no such provision, and the cases of *Littlejohn v. Regents of University,* 71 Wis. 437, 37 N. W. 346; and *Jordan v. Estate of Warner,* 107 Wis. 539, 83 N. W. 946, clearly imply that there is no such limitation in Wisconsin.

With these principles in mind, it is necessary to advert to the facts. It is the contention of petitioner that the account in this case is not in dispute; that it is conceded that the charges were made; that there is no issue as to the correctness of the credits for payments; that the sole question is whether or not the charges were correct; that this question will be answered by expert testimony establishing the capacity of the petitioner's plant; that the general attack upon the charges will be by such demonstration as respondent can make that the petitioner's plant, at the time when each charge was made, did not have the capacity to furnish the amount of power for which the respondent was billed; that this is a matter of expert testimony and inferences from such testimony, and that it has nothing to do with the examination of a long account.

The memoranda containing the charges and credits must be considered to constitute an account, and, in view of the number of charges and credits, to constitute a long account. They imply dealings between respondent and petitioner arising out of the sale of and payment for electrical energy, and are not mere items of damage. They are not subject to the criticism that they lack mutuality, and they constitute regularly kept memoranda of account.

The serious question is whether the trial of the issues requires the examination of a long account. This depends upon the sense which is properly attributable to the word "examination" as that term is used in the statute. If the examination of a long account includes merely the examination of the memoranda composing it, and the striking of a balance by such interior evidence as is furnished by the memoranda, then the trial of the issues in this case does not involve the examination of a long account. The term has a broader meaning than this, however. In *Chicago & N. W. R. Co. v. Faist,* 87 Wis. 360, 58 N. W. 744, plaintiff com-

menced an action to recover for demurrage. Two long series of charges, in the form of accounts and attached as schedules to the complaint, showing the number of each car detained, the date and time of its detention, and the amount claimed by reason thereof, were involved. The court held this referable as an account in spite of the fact that the charges were unliquidated, stating that while it is true that the charges were unliquidated, so also were the items of a bill of goods sold at various times on a *quantum valebant*.

In *Cassidy v. McFarland*, 139 N. Y. 201, 206, 34 N. E. 893, 894, the court said:

"But the examination of a long account, which the Code contemplates, is something more than mere formal proof of its existence. It imports an actual contest as to the correctness of the different charges, or, at least, of several of them; a prolonged examination of witnesses upon the issue, conflicting proof, and a judicial inquiry and determination as to each one of numerous litigated items."

In this case it will be necessary for the respondent to demonstrate the incorrectness of each or some of the items of charge. When and if the respondent does this, it will demonstrate the incorrectness of the account. It is our conclusion that the fact that the demonstration of the inaccuracy of an account is by extrinsic evidence showing the incorrectness of individual items of account does not result in the conclusion that the trial of the issues does not involve the examination of a long account. While this is not strictly an action on an account, it is not required to be by the authorities which have heretofore been cited, and it is clear that it is an action in which the account is more than collaterally involved. Had the respondent refused to pay for the current, and been sued by petitioner, the action would literally be upon the account. Respondent would have set up the incorrectness of the charges, and would have at-

tempted to establish this defense by the same sort of proof that it will be compelled to resort to here. The fact that respondent had paid the charges, and now seeks to recover overpayments, will not ·warrant the conclusion that the account is involved only collaterally.

It is our conclusion that the order directing a compulsory reference was properly made, and that the alternative writ should be quashed.

*By the Court.*—Writ quashed.