REBECCA GRASSL BRADLEY, J.
| 117. {concurring in part, dissenting in part). Universal Processing Services of Wisconsin, LLC, doing business as Newtek, petitioned this court for a supervisory writ only after first acquiescing to discovery under the Order of Reference (the "Reference"), receiving an adverse summary judgment decision, and failing to persuade the *84 court of appeals to grant interlocutory review. Now, Newtek raises various challenges to the Reference, under which it engaged in discovery without objection for nearly a year. Because Newtek's objections are untimely and not properly before this court, I concur in the majority's decision to deny the petition for a supervisory writ.[1]
f 118. Nevertheless, I respectfully dissent from the majority's declaration of rights pursuant to this court's superintending authority under the Wisconsin Constitution. Although I agree with the majority's conclusion that the Reference impermissibly delegated the circuit court's constitutionally vested judicial power to the referee,[2] I disagree with its decision to grant retrospective relief to a party that sat on its rights and did not follow proper procedures when petitioning this court.[3] The majority opinion, in effect, grants the writ despite technically denying it. I disagree with the majority's approach and would instead employ this court's superintending authority to prospectively vacate the Reference to the extent it violates the Wisconsin Constitution.[4]
*85 HH
¶ 119. Two procedural deficiencies hamper Newtek's petition. First, Newtek skipped the court of appeals without an adequate justification and instead filed its petition first in this court. Second, Newtek failed to timely object to the Reference. Either deficiency alone provides a sufficient basis for denying the writ; together, they prove fatal. See Burnett v. Alt, 224 Wis. 2d 72, 96, 589 N.W.2d 21 (1999).
A
¶ 120. Wisconsin Stat. § (Rule) 809.71 (2015-16)[5] establishes the procedure for asking this court to issue a supervisory writ:
A person may request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition in accordance with s. 809.51. Aperson seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.
In this case, Newtek did not file a petition for a supervisory writ in the court of appeals before filing its petition in this court; consequently, this court will grant the writ only if Newtek "show[s] why it was impractical to seek the writ in the court of appeals," as *86 § (Rule) 809.71 requires. See Burnett, 224 Wis. 2d at 96. To justify ignoring the words of the statute and filing with us first, Newtek explains it "determined that it would be impractical to petition the court of appeals to issue a writ directing the circuit court to vacate the appointment" after "the court of appeals declined to review the referral on Newtek's petition for interlocutory review."
¶ 121. Like the majority, I am not persuaded that the court of appeals' denial of interlocutory review made it impractical for Newtek to seek a supervisory writ from that court. See majority op., ¶¶ 41-44. Interlocutory review and supervisory writs are distinct procedural devices and implicate different legal standards. The court of appeals may permit an interlocutory appeal if it determines that immediate review of a non-final order will "[m]aterially advance the termination of the litigation or clarify further proceedings in the litigation," "[p]rotect the petitioner from substantial or irreparable injury," or "[c]larify an issue of general importance in the administration of justice." Wis. Stat. § 808.03(2)(a)-(c). By contrast, a "supervisory writ... serves a narrow function: to provide for the direct control of lower courts, judges, and other judicial officers who fail to fulfill non-discretionary duties, causing harm that cannot be remedied through the appellate review process." State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶ 24, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 122. Although both legal standards account for possible irreparable harm in the absence of extraordinary review, they otherwise diverge: a request for interlocutory review focuses on efficient resolution of the litigation, whereas supervisory writ proceedings evaluate whether a judicial officer complied with obli *87 gations under the law. A circuit court's actions may not warrant interlocutory review on the merits but could nevertheless require correction by an appellate court exercising its supervisory authority.
¶ 123. Newtek presents solely a conclusory claim that petitioning the court of appeals for a supervisory writ was impractical, and as the majority correctly holds, we should not "cast doubt on the continued vitality of the 'impracticality' requirement." Majority op., | 44. Because Newtek failed to follow the statutory procedure for issuance of a writ, this court should deny the petition.
B
¶ 124. Also problematic for Newtek is its substantial delay in raising any objection to the Reference. Even if this court were to look past Newtek's failure to comply with the procedures in Wis. Stat. § (Rule) 809.71, Newtek's year-long compliance with the Reference undermines the merits of its petition. To obtain a supervisory writ, a party must make four showings: (1) appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result from inaction; (3) the circuit court's duty is plain, and the court violated or intends to violate that duty; and (4) the request is prompt and speedy. State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶ 80, 363 Wis. 2d 1, 866 N.W.2d 165 (citing Kalal, 271 Wis. 2d 633, ¶ 17).
¶ 125. Here, Newtek fails to satisfy the fourth criterion because its request was neither prompt nor speedy. Instead of challenging the Reference on the record as soon as the circuit court entered the order, Newtek assented to discovery under the referee's supervision for months, accepting many discovery rulings without objection. Indeed, Newtek's only objections came when it received unfavorable decisions from *88 the referee: it objected to some of the referee's discovery decisions under the procedure specified in the Reference, and it aggressively challenged the referee's summary judgment determinations in the circuit court, the court of appeals, and now this court.
¶ 126. Newtek's delayed objection to the Reference illustrates why a writ will issue only when a party makes a prompt and speedy request for relief. In the absence of a timely-request requirement, a strategic party could intentionally wait to file a petition for a writ until after the referee made an adverse decision. That way, the party could accept favorable decisions while preserving a method of collaterally attacking an unacceptably unfavorable one. If the party suspected or knew from the outset that constitutional deficiencies marred the reference, it could then rely on a supervisory writ to secure a "do-over," essentially using the supervisory writ as an interlocutory appeal— even though a "writ of supervision is not a substitute for an appeal." Kalal, 271 Wis. 2d 633, ¶ 17 (quoting State ex rel. Dressler v. Circuit Ct. for Racine Cty., 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991)).
¶ 127. Nothing prevented Newtek from petitioning the court of appeals for a supervisory writ as soon as the circuit court made the Reference. Newtek's counsel acknowledged as much during oral arguments before this court. The serious problems we identify with the Reference suggest Newtek likely possessed a meritorious claim, had it promptly pursued a remedy. But it did not do so. Because Newtek instead challenged the Reference only after losing on summary judgment, it failed to timely seek relief. This failure, coupled with its failure to seek relief from the court of appeals before petitioning this court for a supervisory writ, warrants denial of its petition and the retrospective relief it requested.
*89 II
¶ 128. Despite the procedural deficiencies m Newtek's petition, I agree with the majority that this court should address the merits of the constitutional questions raised by this Reference. See Kalal, 271 Wis. 2d 633, f 26 ("Although the Kalals have failed to establish the existence of a plain duty and are not entitled to a supervisory writ, we will address the statutory interpretation question presented by this case."). Referees offer circuit courts a valuable tool for efficiently allocating court time and resources, so questions about the constitutionally permissible scope of an order of reference are likely to continue to arise. After thorough briefing and argument by adverse, interested parties, this petition offers the court an opportunity to evaluate a particular order for compliance with the referee statute. Examining the proper use of statutorily permissible referees allows us to give guidance to courts and litigants, thus mitigating uncertainty in Wisconsin courts. In support of that endeavor, I write to supplement the already comprehensive discussion in Part III of the majority opinion.
¶ 129. Our evaluation of the Reference at issue here must begin with the text of Wis. Stat. § 805.06, which authorizes the appointment of referees, establishes the circumstances under which a circuit court may make a reference, and delineates some powers and tasks that a circuit court may permissibly delegate. "A court in which an action is pending may appoint a referee," § 805.06(1), but "[a] reference shall be the exception and not the rule," § 805.06(2). Subsection (2) goes on to explain when a court may appoint a referee:
*90 In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.
Subsection (3) then lays out the referee's powers and the circuit court's ability to describe and restrain them:
The order of reference to the referee may specify or limit the referee's powers and may direct the referee to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the referee's report. Subject to the specifications and limitations stated in the order, the referee has and shall exercise the power to regulate all proceedings in every hearing before the referee and to do all acts and take all measures necessary or proper for the efficient performance of duties under the order. The referee may require the production of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The referee may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may personally examine them and may call the parties to the action and examine them upon oath. When a party so requests, the referee shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as a court sitting without a jury.
Wis. Stat. § 805.06(3). Under the limited circumstances when a reference is appropriate, § 805.06 affords the circuit court significant flexibility in assigning responsibilities to the referee.
*91 ¶ 130. When making a reference under Wis. Stat. § 805.06, however, a circuit court must remain mindful of its responsibilities under the Wisconsin Constitution. Cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803) ("[A]n act of the legislature, repugnant to the constitution, is void."). In Wisconsin, "The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature . ..." Wis. Const, art. VII, § 2. Analogizing to the federal Constitution, this court has explained that "the judicial power is the power to hear and determine controversies between parties before courts," which means that "the judicial power is the ultimate adjudicative authority of courts to finally decide rights and responsibilities as between individuals." State v. Williams, 2012 WI 59, ¶ 36, 341 Wis. 2d 191, 814 N.W.2d 460.
¶ 131. As the majority describes, "[a] referee may share judicial labor, but the Order of Reference may not allow a referee to assume the place of the judge" by exercising the judicial power the constitution confers on circuit courts. Majority op., ¶ 82. The judicial power vested in the circuit courts by the constitution places an outer limit on the scope of permissible delegation to referees. For help identifying that constitutional boundary, federal appellate court decisions offer two key insights.[6]
*92 ¶ 132. First, as the majority notes, an order of reference is an improper delegation of the judicial power when it grants the authority to make dispositive decisions. See majority op., ¶ 67 n.35, ¶¶ 72-74. "The use of masters is to aid judges in the performance of specific judicial duties ... and not to displace the court." La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957) (internal quotation mark omitted) (quoting Ex parte Peterson, 253 U.S. 300, 312 (1920)). A court issuing an order of reference must ultimately retain the adjudicative authority implicated by the judicial power derived from the applicable constitution. See United States v. Microsoft Corp., 147 F.3d 935, 954 (D.C. Cir. 1998) ("The concern about nonconsensual references turns on the determination of rights .... It is for this reason that special masters may not decide dispositive pretrial motions."); Stauble v. Warrob, Inc., 977 F.2d 690, 696 (1st Cir. 1992) ("[Reference of fundamental issues of liability to a master for adjudication is not consonant with either Rule 53 or Article III."); Burlington N. R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1072 (9th Cir. 1991) ("[T]he district court's 'rubber stamp' of the master's order is an inexcusable abdication of judicial responsibility and a violation of article III of the Constitution."); In re United States, 816 F.2d 1083, 1091 (6th Cir. 1987) ("[E]ven though the reference of nondisposi-tive discovery matters may be justified ..., it will be the extremely rare case where the reference of a dispositive matter (be it a pretrial motion for summary judgment or the actual trial) will be appropriate.").
*93 ¶ 133. Second, the exceptional circumstances justifying an order of reference do not exist where the trial court is merely busy, dealing with a case involving a large number of parties, or working with an unfamiliar area of law. Most federal appellate courts point to the Supreme Court's opinion in La Buy v. Howes Leather Co., 352 U.S. 249 (1957), which made quick work of several proffered justifications. The Court first concluded that "congestion [on a court's docket] in itself is not such an exceptional circumstance as to warrant a reference to a master." Id. at 259. Neither did the Court accept the case's "unusual complexity of.. . both fact and law" as an exceptional circumstance, observing that, "[o]n the contrary,... [complexity] is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis." Id. "Nor," the Court added, "does ... the great length of time [that] trials will require offer exceptional grounds." Id.
¶ 134. In the decades since the Supreme Court decided LaBuy, federal appellate courts have maintained a high bar to meet the exceptional circumstances requirement. See, e.g., Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 991 F.2d 1080, 1086-87 (3d Cir. 1993) (observing that no special masters employed in two cases involving, respectively, 24 foreign electronics producers and 30,000 school districts across 54 jurisdictions (first citing In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238 (3d Cir. 1983) (subsequent history omitted); then citing In re Sch. Asbestos Litig., 977 F.2d 764 (3d Cir. 1992))); Stauble, 977 F.2d at 695 (declining to "forge an 'exceptional condition' test for cases of blended liability and damages"); In re United States, 816 F.2d at 1089 ("[T]he interest in a quick resolution of the case is simply an alternative way of asserting *94 calendar congestion and the possibility of a lengthy trial as exceptional conditions . .. Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814, 818 & n.l (2d Cir. 1986) (rebuking trial judge for appointing special master because the judge stated he did not "understand anything about the merits of any patent or trademark case" and was "not about to educate [himself] in that jungle"); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F.2d 698, 712 (7th Cir. 1984) (concluding no exceptional condition existed in case involving "several thousand pages" of documents when trial court felt it "did not have time for a long trial").
¶ 135. In light of these principles, the deficiencies in the Reference here are readily apparent. When informing the parties of its intent to appoint a referee, the circuit court cited the 450 cases on its docket, explaining that it did not want "to expend a lot of time dealing with [the parties'] discovery bickering" or be a "personal slave to [their] discovery disputes." The court did not want to "waste precious court time" that it could "give to other cases." On its face, the final Reference granted the referee "the full authority of the [c]ourt to hear and decide, subject to [c]ourt review . .. , any other matters assigned ... by the [c]ourt. All motions filed, whether discovery or dispositive, shall initially be heard and decided by the [referee], subject to review processes" as described elsewhere in the Reference.
¶ 136. Put plainly, because the circuit court was busy and did not want to deal with the parties, it gave the referee authority over all matters in the litigation —including dispositive pretrial motions. That delegation "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." LaBuy, 352 U.S. at 256.
*95 III
¶ 137. It is with regard to invocation of this court's constitutional superintending authority that I depart most significantly from the majority opinion. The Wisconsin Constitution provides: "The supreme court shall have superintending and administrative authority over all courts." Wis. Const, art. VII, § 3. This court has interpreted its superintending authority as "a grant of power" that is "unlimited in extent" and "indefinite in character," State v. Jerrell C.J., 2005 WI 105, ¶ 40, 283 Wis. 2d 145, 699 N.W.2d 110 (quoting State v. Jennings, 2002 WI 44, ¶ 13, 252 Wis. 2d 228, 647 N.W.2d 142), although the precise scope of that authority is not without controversy, see id., ¶ 146 (Prosser, J., concurring in part, dissenting in part).
¶ 138. Superintending authority is a power that the court does not and should not use lightly. Arneson v. Jezwinski, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996) (citing In re Phelan, 225 Wis. 314, 321, 274 N.W. 411 (1937)). At its core, superintending authority "enables the court to control the course of ordinary litigation in the lower courts of Wisconsin." Id. (first citing Phelan, 225 Wis. at 320-21; then citing State ex rel. Fourth Nat'l Bank of Phila. v. Johnson, 103 Wis. 591, 613, 79 N.W. 1081 (1899)). Similar to the court's standard for issuance of a supervisory writ, "to invoke the superintending power to correct an error of the trial court, it is necessary to establish that an appeal from a final judgment is inadequate, and that grave hardship will follow a refusal to exercise the power." State ex rel. Hustisford Light, Power & Mfg. Co. v. Grimm, 208 Wis. 366, 371, 243 N.W. 763 (1932); see also Jerrell C.J., 283 Wis. 2d 145, ¶ 145 (Prosser, J., concurring in part, dissenting in part) ("The purpose of this ['superintend *96 ing control over inferior courts'] jurisdiction is to protect the legal rights of a litigant when the ordinary processes of action, appeal and review are inadequate to meet the situation, and where there is need for such intervention to avoid grave hardship or complete denial of these rights." (alterations in original) (quoting John D. Wickhem, The Power of Superintending Control of the Wisconsin Supreme Court, 1941 Wis. L. Rev. 153, 161-62)).
¶ 139. Retrospective application of this court's superintending authority is not appropriate in this case because Newtek's delay in seeking relief from the Reference discredits its claim of grave harm. By objecting to the Reference only after the referee decided the motion for summary judgment, Newtek showed its hand: it challenges the referee's authority as a means to achieving a different outcome on the merits. Presumably, Newtek would not have pursued extraordinary relief to vacate the Reference if the referee had decided summary judgment and the other challenged discovery decisions in Newtek's favor. Those decisions present questions reasonably handled by means of an ordinary appeal, and Newtek should not now receive extraordinary relief when it submitted to months of decisions by the referee, protesting only after receiving an adverse result.
¶ 140. At the same time, the circuit court's improper delegation of the judicial power reflects an undeniable constitutional deficiency in the Reference. Allowing the case to proceed under the Reference without alteration could lead to the nonsensical result of the parties completing pretrial proceedings under an order that this court declared partially unconstitutional. To the extent any additional proceedings occur under the Reference, the right of all parties to an *97 adjudication by a circuit court vested with the judicial power under the Wisconsin Constitution remains squarely at issue. Accordingly, prospectively vacating the order to the extent it contravenes the Wisconsin Constitution is an appropriate, limited application of our superintending authority over Wisconsin courts for the purpose of preserving the rights of these parties going forward.
IV
¶ 141. On the whole, Wisconsin's circuit courts do an admirable job of resolving complex disputes amidst crowded dockets, and the rules of civil procedure permit them to appoint a referee to facilitate expeditious resolution of some of those cases under exceptional circumstances. But when making a reference as allowed by rule, the circuit courts must heed their responsibilities under a higher authority, the Wisconsin Constitution. By improperly delegating judicial power to the referee, the Reference at issue here transgressed an important constitutional limitation. Although I would deny the petition for a supervisory writ because Newtek did not timely present it in a procedurally proper manner, I conclude that the Reference's constitutional infirmities require a limited exercise of this court's superintending power to prospectively vacate the Reference to the extent it denies these parties their constitutional rights. I therefore respectfully concur in part and dissent in part.
¶ 142. I am authorized to state that Justice DANIEL KELLY joins this opinion.

 Accordingly, I agree with and join the majority opinion's analysis in Part II to the extent it concludes "the petition is not properly before this court." Majority op., ¶ 36.

 I join parts I and V of the majority opinion. Additionally, I join Part IV of the majority opinion, except its determination that "the parties will be irreparably harmed should a decision on the validity of the Order of Reference be delayed until after final judgment and appeal." Majority op., ¶ 81. I would not reach the issues discussed in Part VI of the majority opinion.

 I therefore agree with much of Part III of the majority opinion, except that I would discuss the merits of the petition prospectively only with respect to these parties, so as to provide guidance to courts and litigants.

 As a result, I do not join Part VII of the majority opinion.

 All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

 "It is a well-settled principle of Wisconsin law 'that where a Wisconsin Rule of Civil Procedure is based on a Federal Rule of Civil Procedure, decisions of the federal courts, to the extent they show a pattern of construction, are considered persuasive *92 authority.'" J.L. Phillips & Assocs. v. E & H Plastic Corp., 217 Wis. 2d 348, 356, 577 N.W.2d 13 (1998) (quoting Neylan v. Vorwald, 124 Wis. 2d 85, 99-100, 368 N.W.2d 648 (1985)). The current language of Wis. Stat. § 805.06 parallels the language of Rule 53 as it existed before 2003. See Fed. R. Civ. P. 53, 28 U.S.C. 782 (2000) (amended 2003).