STATE EX REL. PIERCE VS. BOARD OF TRUSTEES OF STOUT INSTITUTE and others.

*September 19—October 27, 1914.*

*Supreme court: Original jurisdiction: State boards: Appropriations for public buildings: Deferring erection: Discretion: Mandamus: Stout Institute: Governor: Powers and duties.*

1. A proceeding wherein, on the relation of a private citizen, it is sought to compel trustees of a state school to proceed with the erection of a building for which the legislature has made an appropriation, is properly cognizable by the supreme court in the exercise of its original jurisdiction, since it affects public interests and the rights of the people at large.
2. When state boards are authorized by the legislature to erect public buildings they must of necessity exercise their judgment and discretion in executing such authority; and the mere fact that an appropriation is made and a date fixed when it shall become available, does not necessarily imply that the construction shall be commenced before or at that time.
3. Under sec. 172—49, Stats. 1913, appropriating to the Stout Institute, among other sums, $200,000 for the erection of a household arts building, the board of trustees of the Institute exercised a reasonable discretion when, taking into consideration the existing financial and tax problems of the state, they concluded that it was for the best interests of the Institute to defer calling for the payment of such appropriation for one year after it became available; and their action in the matter is therefore not subject to control by *mandamus*.
4. It was not improper in such case for the governor to confer with the board of trustees and seek to inform them, in the public interest, of the desirability of deferring the expenditure of the appropriation, in order to reduce the tax burden of that year.

APPLICATION to the supreme court by the relator, the attorney general consenting, upon leave given, for an original writ of *mandamus* to compel the defendants, the *Board of Trustees of the Stout Institute,* to proceed with the construction and erection of the household arts building, including an

auditorium and offices for the administrative work of the Stout Institute.

The petition alleges that the relator is a resident, citizen, and taxpayer of this state. The defendants are members of the State Board of Industrial Education, as constituted under the provisions of sec. 553p—1, Stats. By sec. 553p—10, Stats., they also constitute a body corporate under the name of *"Board of Trustees of the Stout Institute."*

Upon the *Board's* application to the legislature for appropriations for the benefit of the Institute for various purposes, the legislature of 1913 passed an act (sec. 172—49, Stats.) granting to the Institute certain appropriations, among which was the one in controversy, namely, $200,000 for the erection of the above mentioned building. An enlargement of the central heating plant was made and about $15,000 was charged to the $200,000 as the share of the prospective building. This appropriation of $200,000 was made available in the months of March and July, 1914. Upon request of the governor of the state a meeting of the *Board of Trustees* was held to confer with the governor respecting a postponement of the expenditure of this appropriation. He informed them that numerous requests had come to him to call a special session of the legislature in order to have some of the past appropriations repealed and that he desired to avoid the expense to the state of the cost of this special session of the legislature. He indicated to the *Board* that if the expenditure of appropriations for the various institutions of the state were deferred no special session would be necessary, and that other state boards had decided to defer and postpone expenditure of appropriations made to their institutions for permanent improvements. After having the matter presented to them, the *Board of Trustees* on April 21, 1914, adopted a resolution whereby they postponed calling for the $200,000 appropriation until the 1st day of July, 1915.

The defendants filed a return to the alternative writ alleg-

ing the facts above stated and asked that the proceedings be dismissed.   The relator demurred to this return.   The issues raised by this demurrer are presented to the court upon this hearing.

*John A. Aylward* and *M. B. Olbrich,* for the relator.

For the defendants there was a brief by *Olin, Butler, Stebbins, Curkeet & Stroud,* and oral argument by *H. L. Butler.*

SIEBECKER, J.   The purpose of the action is to command the board of trustees of a state school to perform duties imposed upon them by law.   It· is averred that the defendants refuse to perform duties imposed upon them by law and that their refusal to perform them deprives a large number of the people of this state of their right and privilege to secure and enjoy the benefits and advantages of such school.

It is claimed by the defendants that the present case is not a proper one for the exercise of the original jurisdiction of this court.   The subject of the exercise of the original jurisdiction of this· court has received the attention of the court upon numerous occasions and was extensively reviewed in the *Income Tax Cases,* 148 Wis. 456, 134 N. W.· 673, 135 N. W. 164.   Reference to the discussion in those cases suffices for the purpose of showing under what circumstances the original jurisdiction of this court may be invoked.   It is there declared that this jurisdiction may properly be exercised to compel state officers to perform ministerial duties imposed by law in which the people of the state have a substantial interest.   In such cases the action may be prosecuted on the relation of a private citizen.   *State ex rel. Drake v. Doyle,* 40 Wis. 175.   In the case of *State ex rel. Lamb v. Cunningham,* 83 Wis. 90, 53 N. W. 35, the court affirms what had been adopted as the law on this question in this court, and states: "The great weight of American authority is to the effect that, where the relief sought is a public matter or a matter of public right, the people at large are the real party,

and *any citizen* is entitled to the writ of *mandamus* to enforce the performance of such public duty." Merrill, Mandamus, § 230.

The subject matter of this proceeding affects public interests and rights of the people at large, which may be protected and enforced within the original jurisdiction of this court; and the inquiry is, Are the duties imposed upon this *Board of Trustees* for the erection of the building in question so absolute as to deprive the *Board* from exercising their judgment and discretion in deferring and postponing the erection of this building and expending the appropriation therefor, as they did by the resolution of April 21, 1914? The demurrer to the return challenges its sufficiency upon the ground that it shows upon its face that the acts alleged do not constitute a defense, because it fails to allege any cause or ground justifying the defendants in not obeying the writ of this court commanding them to proceed forthwith with the construction and erection of the household arts building for the Institute pursuant to the law appropriating the sum of $200,000 for that purpose. There is appropriated by ch. 229, Laws of 1913, for the Stout Institute the following sums: Annually on July 1st, $20,000 for current expenses. For the purpose of erecting buildings and purchasing land the act appropriates in sub. 7, sec. 2, "on March 1, 1914, $75,000," and in sub. 8, "on July 1, 1914, $125,000." It is provided by sub. 9:

"The sums appropriated for Stout Institute in subsections 6, 7, and 8 . . . are for the following purposes:

"(a) $200,000 for the erection of a building for the household arts department including an auditorium and offices for the administrative work in the Stout Institute in Menomonie, Wisconsin."

"(b) $50,000 for an addition to the present manual training building in use by the Institute, to provide for an extension of the present heating plant by an enlargement of the

existing boiler room and coal storage room and by the purchase and installation of the necessary additional boilers and also to provide in said addition, rooms necessary to accommodate classes in bricklaying and cement work, plumbing, carpentry, moulding and mill work.

"(c) $15,000 for the purchase of land for a campus and to provide for the future development of the Stout Institute."

The relator prosecutes this action for the purpose of having this court peremptorily command the *Board of Trustees of the Stout Institute* to construct, without delay, the household arts building for which $200,000 was appropriated in paragraph (a) above.

The record shows that the *Board* has not declined to construct the building. Ch. 229, Laws of 1913, was adopted May 13, 1913, and became effective the following July 1st. The *Board* in the summer and fall of the same year proceeded to make the improvement providing an addition to the manual training building and an extension of the existing heating plant as specified in the act, and practically completed them prior to February 1, 1914. The *Board* also acquired the land for the campus. The *Board* asserts that in their judgment the present facilities of the school for the domestic science and household arts departments will fairly and reasonably accommodate the attending students pending the construction and completion of the new building for the departments. It must also be taken as true that the *Board of Trustees* are taking such steps as in their judgment are required to carry out the objects of the appropriation for this purpose, and that their resolution of April 21, 1914, declaring "that in view of the desirability of reducing state expenses and bringing the state tax levy down to its normal level, the State Board of Industrial Education will not call, until after July 1, 1915, for the two hundred thousand dollars appropriated by the legislature in 1913, . . ." is considered by them an appropriate step in promoting the best

interests of the Institute.   The functions and duties of this
*Board of Trustees* in carrying out the purposes of this act for
the erection of this building are in their nature like those of
other state boards performing similar duties for the state.
It is common knowledge that, when such boards are authorized
to erect public buildings, they of necessity are required to ex-
ercise their judgment, discretion, and wisdom in executing
such authority.   It is needless to specify facts and circum-
stances that commonly and necessarily arise in the practical
execution of such a public enterprise which demand the ex-
ercise of judgment and discretion in working out the pur-
poses and executing the undertaking.   Instances of such
necessity readily occur to the mind when one contemplates
the conditions that inevitably arise in the practical adminis-
tration of such public affairs.   The very nature of the public
undertaking requires that the legislature select individuals as
the agency to execute this governmental function and that
they must have power to exercise their judgment and discre-
tion in all matters that reason and common sense require for
a proper and faithful administration of the trust imposed on
them.   The claim is made that the act appropriating $200,000
for a domestic science and arts building leaves no discretion
to the *Board* as to the time they are to proceed with the con-
struction of the building.   The time of commencing the con-
struction of the building is not specifically fixed by the act,
unless the date when the appropriation is made available was
intended by the legislature as the time when the construction
of the building must be commenced.   The fact that an appro-
priation is made does not necessarily imply that it must be ex-
pended immediately.   Common experience in such affairs
refutes this, and we must consider that the legislature made
this appropriation in the light of such experience and knowl-
edge.   This *Board* is given extensive power of control over
the properties of the Institute and its management and to
hold its property as trustee for the state and that they shall

constitute a body corporate, "and shall possess all powers necessary or convenient to accomplish the objects and perform the duties prescribed by law." Granting the appropriation to the Institute carried with it by necessary implication the right of the *Board* to apply and use it under the powers conferred, whenever, under the exigencies of the undertaking, they found it necessary and convenient, to accomplish the objects of the Institute. It must be assumed that the legislature in making the appropriation acted in view of the facts and circumstances showing the needs of the school and that it should be applied by the *Board* in the usual and customary way of administering such public affairs. True the facts and circumstances presented to the legislature showed a need of this building, but it is not apparent that the *Board's* action to defer expenditure of this appropriation for one year after it was made available operated to unreasonably deprive the people of the state of the advantages to be enjoyed from this Institute. The return alleges that this action was taken by the *Board* in consideration and regard of the best interests of the Institute, and that, acting upon their own information, judgment, and discretion, they believed and determined that the interests of the Institute would be promoted by deferring demand for the moneys appropriated for this purpose to July 1, 1915. The purposes of the appropriation and the authority of the trustees in the matter clearly conferred on them a discretion to determine when it would be for the best interests of the Institute to call for the moneys to pay for the cost of this building. This discretion must of course be exercised reasonably. It cannot be exercised in a way which is an evasion of a positive duty, nor in an arbitrary or capricious manner which amounts to a refusal of exercising a reasonable discretion. It is strenuously urged that the admitted facts show that the *Board* did not exercise their discretion upon any proper grounds, but that they acted from interests which are wholly foreign to their duties, and that the gov-

ernor induced them to take this step for political reasons which had no bearing on the question of a discharge of the duties imposed upon them by the law making this appropriation. The record shows that the *Board* considered the facts and circumstances of the advisability of proceeding immediately with the erection of this building in the light of the needs and interests of the Institute, and concluded that under existing financial and tax problems of the state it was for the best interests of the Institute to defer calling for the payment of this appropriation for one year after it became available. The court cannot say that this was a wholly unwarranted exercise of their judgment and discretion. We perceive nothing extraordinary or improper in the action of the governor, as the head of the administrative affairs of the state, to confer with the *Board* and seek to inform them of the public interest and the desirability that the legislative appropriation for this purpose and others of a similar nature which became available in 1914 be not called for until after July 1, 1915, for the purpose of reducing the tax burden of that year. It is not within the province of courts to investigate the motives or the reasons which may prompt an executive in the performance of his official duties. It must be presumed that the *Board* acted on its own judgment and that they deemed these considerations material in promoting the interests of the Institute. Such a course of action on their part embraces nothing foreign or adverse to the public interests and rights involved in the proper performance of their public function in administering the affairs of this school and does not constitute an abuse of their discretion in the matter. The rule governing the exercise of jurisdiction by *mandamus* over public officers in cases requiring the exercise of official judgment is aptly stated in High on Extraordinary Legal Remedies (3d ed.) sec. 42:

. "And whenever public officers are vested with powers of a discretionary nature as to the performance of any official

duty, or in reaching a given result of official action they are required to exercise any degree of judgment, while it is proper by *mandamus* to set them in motion and to require their action upon all matters officially intrusted to their judgment and discretion, the courts will in no manner interfere with the exercise of their discretion, nor attempt by *mandamus* to control or dictate the judgment to be given.   Indeed, so jealous are the courts of encroaching in any manner upon the discretionary powers of public officers, that if any reasonable doubt exists as to the question of discretion or want of discretion, they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer."

We are of the opinion that the adoption by the *Board of Trustees* of the resolution of April 21, 1914, postponing the expenditure of the appropriation for this building, was the exercise of a reasonable discretion under the duties imposed upon them by law, and that their action in the matter is not subject to control by *mandamus.*   From this view of the case it follows that the demurrer to the return must be overruled. The relation states no cause for issuing a peremptory writ of *mandamus,* and judgment must be ordered quashing the writ without costs.

*By the Court.*—It is so ordered.