PETITION OF HEIL. [EMERGENCY BOARD. STATE ANNUITY AND INVESTMENT BOARD.]

*December 3, 1938—February 16, 1939.*

*Miller, Mack & Fairchild* and *J. G. Hardgrove,* all of Milwaukee, for the petitioner.

The *Attorney General, L. E. Vaudreuil,* deputy attorney general, and *Harold E. Stafford* and *Harold M. Wilkie,* special counsel, for the respondents.

The following memorandum decision was filed December 3, 1938:

PER CURIAM.    It is considered that this court cannot entertain this action for two reasons: (1) Petitioner is not a party to the action in the circuit court, and it is a well-established rule that superintending control will be exercised only at the behest of a party to a proceeding in an inferior court and then for his protection to avoid expense, hardship, or miscarriage of justice great enough to constitute a situation of exigency.

(2) The claim by petitioner that the subject matter of the action so concerns the sovereign rights of the state of Wis-

consin that this court has sole and exclusive jurisdiction for the issuance of this writ for prerogative purposes cannot be sustained.

It is considered that this court has the power not merely to exercise its original jurisdiction in cases proper for the exercise of that jurisdiction but in a proper case to exclude inferior courts from any interference with this exercise. The power of this court is a power to exclude inferior courts from exercising jurisdiction in cases which are of such great importance to the people of the state as to warrant such action by this court, but this power is only exercised as an incident to the exercise of the original jurisdiction of this court by prerogative writs as distinguished from the superintending control of this court over inferior courts. In this case no application for the exercise of such original jurisdiction by this court has been made.

Due to the exigencies of this case this memorandum decision is filed. Opinion will be filed later.

The order staying further proceedings in the circuit court is vacated.

The following statement and opinion were filed February 16, 1939:

Petition of Julius P. Heil for leave to commence an action of prohibition in this court to restrain the circuit court for Dane county from further proceedings in an action in said circuit court entitled State of Wisconsin on the relation of Philip F. La Follette, E. Merwyn Rowlands, and Ernest J. Hoesly, constituting the emergency board of the state of Wisconsin, plaintiffs, against Theodore Dammann, as secretary of state of the state of Wisconsin, and Solomon Levitan, as state treasurer of the state of Wisconsin, defendants, praying for a writ of *mandamus* requiring them to disburse certain moneys out of the general funds of the state of Wisconsin. The petition alleges that the appropriation upon which the duty of disbursement is claimed to be based was

not made in accordance with the constitution and laws of the state. The petition further alleges that the subject matter of the action is *publici juris,* and concerns the sovereign rights of the state of Wisconsin in that the action seeks to compel state officers to perform official acts contrary to law materially affecting the interests of the people at large. It is further alleged that the circuit court is without jurisdiction for the reason that the action is *publici juris,* involves the sovereign rights of the people and the use of the writ of *mandamus* for prerogative purposes; and that these are purposes for which such writ cannot be employed in the circuit court for the reason that the supreme court has sole and exclusive jurisdiction for the exercise of said writ for such prerogative purposes.

WICKHEM, J. At the outset it should be pointed out that the petition in this case seeks to invoke the superintending or supervisory control by this court over inferior courts. The petition does not ask leave to commence an original action in this court to restrain the state officers in question from making disbursements in accordance with orders of the emergency board. It is sought to have this court intervene in an action at issue in a circuit court involving the same subject matter and to stay the arm of the circuit court upon the ground that it is without jurisdiction. Due to the exigencies of the situation, this court denied the petition and briefly stated its reasons for such denial. In this memorandum the court announced that it would file an opinion making such further exposition of its reasons as was deemed necessary and advisable. This opinion is in response thereto.

In the memorandum it was stated that the first reason for declining to entertain the action was that petitioner was not a party to the action in the circuit court and that superintending control is exercised only at the behest of a party to

a proceeding in an inferior court and then for his protection, to avoid expense, hardship, or miscarriage of justice great enough to constitute a situation of exigency. We find it necessary to make very little modification of this statement. From an examination of the cases in which the superintending control of this court has been exercised it will be found that the court has assumed or stated that the purpose of this jurisdiction is the protection of a person in his rights as litigant. See *State ex rel. Hustisford L., P. & M. Co. v. Grimm,* 208 Wis. 366, 243 N. W. 763. The only two situations which may constitute exceptions are: (1) Cases where the exercise of the superintending control is necessary to the proper exercise of appellate jurisdiction. Where appellate jurisdiction has attached it is occasionally necessary to invoke the superintending control over inferior courts to insure remission of the record or the taking of other steps essential to the exercise of appellate jurisdiction. Even in such situations the action of the court is generally in response to the petition of one of the parties to the litigation, but the court upon its own motion may undoubtedly protect its jurisdiction by the exercise of superintending control. In this connection, see *In re Snyder,* 184 Wis. 10, 198 N. W. 616; *Jones v. Providence Washington Ins. Co.* 151 Wis. 274, 138 N. W. 1005. (2) The court may exercise superintending control as an aid to the exercise of its original jurisdiction when the latter is invoked to protect the sovereignty of the people or in any action under the so-called "prerogative writs." It is somewhat to be doubted whether this is a real exception to the rule stated for the reason that this court as a part of the exercise of its original jurisdiction may obviously remove all obstacles to its determination whether these are the result of the acts of inferior courts or those of any other official or person. In the case of *State ex rel. Zimmerman v. Dammann,* 229 Wis. 570, 283 N. W. 52, it was assumed that in so far as this court

restrained the circuit court for Dane county from further proceedings in these cases it was acting in the exercise of its superintending control. Original jurisdiction having been assumed, the court may give full relief either under its prerogative powers alone or with the assistance of its superintending control. The writ in either case will be the same, and in view of this, no useful purpose will be served by drawing fine distinctions in the matter. It is plain that the petitioner falls within none of these categories. He is not a party to the litigation with respect to which intervention is desired under the supervisory powers. There is no appeal before this court in aid of which the superintending power might be exercised. There is no application to the court to entertain original jurisdiction apart from superintending control or sufficient facts alleged in the petition to warrant permission to commence an original action.

The foregoing considerations would compel us to deny the petition, but the importance of certain contentions made in the briefs in support of the petition would seem to justify a response in the hope that a contribution can be made to the clarification of the law upon the subject.

It is contended that when it is sought to vindicate the sovereignty of the state by appeal to the judiciary, original jurisdiction to entertain an action for this purpose not only is possessed by this court but is exclusively in this court and possessed by no other tribunal. The following expressions of this court are relied upon to establish this proposition. In *Attorney General v. Blossom,* 1 Wis. *317, *320, *330, referring to the writs mentioned in sec. 3, art. VII, of the constitution, this court says:

"This class of writs it would seem, appertain to and are peculiarly the instruments of the sovereign power, acting through its appropriate department; prerogatives of sovereignty, represented in England by the king, and in this coun-

try by the people in their corporate character, or in other words, *the state;* and from their very nature, from their peculiar character, functions and objects, to appertain to and appropriately belong to the supreme judicial tribunal of the state. Being prerogative writs, they do not pertain to courts of inferior jurisdiction. Whatever jurisdiction such courts may have of them, is a delegated one, and by no means inherent in them as representatives of the sovereignty, acting in its judicial capacity. I have been unable to find a single instance in which inferior courts have exercised jurisdiction over any of the class denominated prerogative writs, unless such jurisdiction has been specially conferred. . . .

"And, why was the original jurisdiction given to the supreme court, of these high prerogative writs? Because these are the very armour of sovereignty. Because they are designed for the very purpose of protecting the sovereignty and its ordained officers from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties, and to guard its prerogatives and franchises against usurpation. The convention might well apprehend that it would never do to dissipate and scatter these elements of the state sovereignty among five, ten, twenty or forty inferior tribunals, and wait their tardy progress through them to the supreme tribunal, upon whose decision must finally depend their efficacy."

In *Attorney General v. Railroad Companies,* 35 Wis. 425, 521, in which the principal question was the prerogative character of the writ of injunction, the court had occasion to comment with approval upon the analysis in the *Blossom Case,* and in distinguishing between the use of the prerogative writs by the circuit court and by this court stated:

"The same writs are granted to those courts as to this. It is impossible for a lawyer to suppose that they are granted in the same sense and with the same measure of jurisdiction, to this court as to those courts. . . . The writs are given to the circuit court as an appurtenance to their general original jurisdiction; to this court, for jurisdiction. Those courts take the writs with unlimited original jurisdiction of them, because they have otherwise general original jurisdiction."

At another place in the same opinion (p. 518) it is stated that the purpose of the constitution was:

"To make this court indeed a supreme judicial tribunal over the whole state; a court of last resort on all judicial questions under the constitution and laws of the state; a court of first resort on all judicial questions affecting the sovereignty of the state, its franchises or prerogatives, or the liberties of its people."

In the *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, two cases were involved. One was an original action in the supreme court to enjoin the enforcement of the income tax law. The other was an action for the same purpose brought in the circuit court for Dane county. In the latter case the demurrer to the complaint had been sustained in the lower court upon the ground of lack of jurisdiction. In connection with the first of the actions the court refers to the original jurisdiction of this court in the following language (p. 500):

"This transcendent jurisdiction is a jurisdiction reserved for the use of the state itself when it appears to be necessary to vindicate or protect its prerogatives or franchises or the liberties of its people; the state uses it to punish or prevent wrongs to itself or to the whole people. . . ."

In *In re Exercise of Original Jurisdiction,* 201 Wis. 123, 128, 229 N. W. 643, the court stated:

"Attention is called to the fact that in cases *publici juris* not involving the sovereignty of the state and not requiring the use of the prerogative writs, the circuit court has concurrent jurisdiction with this court. This court will with the greatest reluctance grant leave for the exercise of its original jurisdiction in all such cases, especially where questions of fact are involved. . . ." (Citing *State ex rel. Hartung v. Milwaukee,* 102 Wis. 509, 78 N. W. 756.)

In *State ex rel. Martin v. Ekern,* 228 Wis. 645, 650, 280 N. W. 393, this court again referred to the language of the

*Blossom Case, supra,* "that it would never do to dissipate and scatter these elements of the state sovereignty among five, ten, twenty or forty inferior tribunals, and wait their tardy progress through them to the supreme tribunal, upon whose decision must finally depend their efficacy."

At first sight and even after considerable study and analysis these excerpts appear quite strongly to bear out petitioner's contention. We think, however, that a careful consideration of the later opinions of the court requires that the contention be rejected.

It may be well at the outset to point out that one of the sources of confusion to the modern lawyer who deals with this subject has been the tendency to confuse superintending control with the other branch of original jurisdiction, the so-called "field of prerogative jurisdiction." It is clear that in the early cases when the courts talked of original jurisdiction they referred to the issuance of prerogative writs for the purpose of protecting the liberties of the people and the sovereignty of the state. It is equally clear that in more recent years the term "original action" has been used indiscriminately to refer to any action commenced in this court whether for the purpose of invoking superintending control or the issuance of one of the so-called "prerogative" writs. Hence, it will be advisable to recur to the constitutional provisions and to the early decisions and again to call attention to the separate and distinct character of these two jurisdictions.

Sec. 3, art. VII, Const., reads as follows:

"The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other original and remedial writs, and to hear and determine the same."

In the case of *State ex rel. Resley v. Farwell,* 3 Pin. 393, it was held that the power to issue the writs named in this section was limited to situations where their issuance was necessary to assist the appellate or superintending jurisdiction. In other words, this decision limited the jurisdiction of the supreme court under the constitution to appellate jurisdiction and superintending control. This view was rejected in the *Blossom Case, supra.* In that case it was held that the first sentence of section 3 was not a grant of power but a restriction, its purpose being to repel the normal inference from the designation of the supreme court as a court that had all the powers usually exercised by a court. The second clause was held to be a grant of superintending control, probably unnecessary because the power might have been arrived at by construction. The final clause was held to constitute the grant of a distinct jurisdiction, separate both from the appellate jurisdiction and the superintending control. This was the original jurisdiction to entertain cases in which the sovereignty of the state, its franchises or prerogatives, or the liberties of its people were involved. The writs named in this clause "appertain to and are peculiarly the instruments of the sovereign power, acting through its appropriate department; prerogatives of sovereignty, represented in England by the king and in this country by the people in their corporate character, or in other words, the state." *Attorney General v. Blossom, supra.* In the process of construction by which the existence of this third branch of jurisdiction was derived the court took occasion to speculate upon the reasons and policies behind the grant, and one of these was the inadvisability of dissipating this great power among numerous inferior tribunals. While it is fairly to be argued that the early court considered that jurisdiction was vested exclusively in the supreme court in prerogative matters, it is equally certain that such a doctrine was not neces-

sary to the determination of any of the cases in which it is mentioned.

It is evident that in all of the excerpts which apparently point to the exclusiveness of the supreme court's jurisdiction there is in the mind of the court, (1) the fact that this is a great and necessary power for the protection of sovereignty and the liberties of the people; (2) that it must not be dissipated by being scattered among a large number of inferior tribunals; and (3) that in this field as well as in that of appellate jurisdiction this court must be the supreme tribunal with powers of final determination which will override any and all determinations of other tribunals in these important matters. While it is fairly arguable that the court considered its jurisdiction over prerogative writs for prerogative purposes to be exclusive, it is evident that it also considered its jurisdiction to be correspondingly limited. Thus, in the *Railroad Cases, supra,* it was said (p. 522):

"Other original jurisdiction is prohibited to this court, and the jurisdiction given by the writs is essentially a limited one. Those courts take the prerogative writs as part of their general jurisdiction, with power to put them to all proper uses. This court takes the prerogative writs for prerogative jurisdiction, with power to put them only to prerogative uses proper."

Thus, only in cases affecting the sovereignty of the state, its franchises, and prerogatives, or the liberties of its people was any original jurisdiction vested in this court. This early view of the limited extent of the jurisdiction is important to keep in mind because shortly after these early decisions there began a development that cannot be overlooked in seeking a solution of the question involved here. The most convenient way of demonstrating this development without unduly extending this opinion is to examine the summary contained in the *Income Tax Cases,* 148 Wis. 456, 498, 134 N. W. 673,

135 N. W. 164. In these cases the court elaborately reconsidered the subject of original jurisdiction, and after a complete review of the cases determined after the *Railroad Cases* thus summarized the development:

"The original jurisdiction of this court may be rightly invoked when there is a showing made either that, (1) a citizen is wrongfully deprived of his liberty; (2) a state office has been usurped; (3) a franchise grantable only by the state has been usurped, abused, or forfeited; (4) a law regulating public-service corporations in the interest of the people is systematically disobeyed and set at naught; (5) a navigable river, which the state is bound to keep open as a highway for all, is obstructed or encroached upon, or a public railroad built under a charter granted by the state is about to be destroyed; (6) a state officer declines to perform a ministerial duty, in the performance of which the people at large have a material interest; (7) a state officer is about to perform an official act materially affecting the interests of the people at large, which is contrary to law or imposed upon him by the terms of a law which violates constitutional provisions; or (8) the situation is such, in a matter *publici juris,* that the remedy in the lower courts is entirely lacking or absolutely inadequate, and hence jurisdiction must be taken or justice will be denied."

It was pointed out that this list was not intended to be exclusive, and the concession was made that other cases might fall within the power. Five negative propositions are also stated and they may thus be summarized: (1) A case, although involving a question *publici juris,* will not come within the original jurisdiction if it be only local in effect, subject to the exception named in the 8th class above; (2) a case which involves a mere private interest will not be entertained; (3) a case will not be dismissed because a private interest is involved with a public interest provided the former be incidental and the latter the primary purpose of the action; (4) an action involving a private interest as well as a public interest will not be dismissed merely because the pri-

vate interest may drop out provided the public and private interests be severable and the former still exists; and (5) the constitution has not given the circuit court power to use the writ of injunction for prerogative purposes.

Referring to the list of situations in which original jurisdiction might be invoked, we find that the first three are prob-· ably prerogative cases. Beginning with number 4, it is evident that jurisdiction has been extended to cases that could not be brought within the scope of the so-called "prerogative" cases. Number 4 has to do with a situation created by the systematic disobedience of a law governing public-service corporations in the interests of the people. In such a situation, while the matter may be of great public moment and interest, it is evident that it does not inevitably involve sovereignty, prerogatives, or the liberties of the people. The same comment is applicable to number 5. In number 6, where by hypothesis a public officer declines to perform a ministerial duty in the performance of which the people at large have a material interest, it is quite evident that the jurisdiction has been expanded beyond its earlier limits. It is also clear that in number 7, where a public officer is about to perform an official act materially affecting the interests of the people at large, the situation may well be one which has nothing whatever to do with prerogative or sovereignty. In number 8, the assumption is that the matter is merely *publici juris,* but that the remedy of the lower court is entirely lacking or absolutely inadequate. Here this court may take original jurisdiction in a case in which the lower court has jurisdiction but in which for some reason or other the remedy is not adequate. Cases under number 8 evidently do not involve the prerogative and yet this court is held to have jurisdiction to entertain original actions with respect to them. In the negative propositions it is assumed that although a case involves a question *publici juris,* but is only local in its scope and effect, it may

come within the original jurisdiction if the remedy in the lower court is inadequate. It will be seen from this summary that by the time of the *Income Tax Cases* there had already been a radical departure from the earlier notion that original jurisdiction of the supreme court existed only in cases involving sovereignty or the prerogative, and that it was held to have such jurisdiction in cases in which the circuit court also had jurisdiction. Since the *Income Tax Cases* the court has continued this more liberal view of the scope of its original jurisdiction. Cases which were merely *publici juris* were entertained by the court because of their public importance or because of this importance in combination with circumstances creating an exigency and making the remedy in the circuit court inadequate. In this connection see *State ex rel. Richter v. Chadbourne,* 162 Wis. 410, 156 N. W. 610; *State ex rel. Pierce v. Board of Trustees,* 158 Wis. 417, 149 N. W. 205; *Petition of Anderson,* 164 Wis. 1, 159 N. W. 559; *State ex rel. Johnson v. County Boards,* 165 Wis. 164, 161 N. W. 356; *State ex rel. Horton v. Brechler,* 185 Wis. 599, 202 N. W. 144; *State ex rel. Fugina v. Pierce,* 191 Wis. 1, 209 N. W. 693; *Petition of Price,* 191 Wis. 17, 210 N. W. 844; *State ex rel. Fulton v. Zimmerman,* 191 Wis. 10, 210 N. W. 381; *State ex rel. Federal M. A. Ins. Co. v. Kellogg,* 189 Wis. 638, 208 N. W. 246; *State ex rel. Reynolds v. Appleton,* 197 Wis. 442, 222 N. W. 244.

This liberality of construing the court's powers probably reached its extreme development in cases within the last few years in which original jurisdiction has been exercised for the purpose of granting merely declaratory relief where the question was of sufficient importance to the state at large to warrant the exercise of its jurisdiction. In these cases the action did not even involve in any of its stages use of any of the so-called "prerogative" writs. *State ex rel. Wisconsin Tel. Co. v. Henry,* 218 Wis. 302, 260 N. W. 486; *Petition*

*of Breidenbach,* 214 Wis. 54, 252 N. W. 366; *Rules of Court Case,* 204 Wis. 501, 236 N. W. 717; *State ex rel. Ekern v. Dammann,* 215 Wis. 394, 254 N. W. 759; *State ex rel. La Follette v. Dammann,* 220 Wis. 17, 264 N. W. 627.

Thus, it is evident that what started as a merely prerogative jurisdiction according to the understanding of the earlier cases has extended far beyond this to cases which in the judgment of the court so importantly affect the people at large as to warrant exercise of original jurisdiction. The court has several times said that each case presents a question of judgment to the supreme court and that its jurisdiction will be exercised on the basis of the facts as they are presented, the court considering the importance of the question as well as the inadequacy of relief in the circuit court. In the memorandum filed in *In re Exercise of Original Jurisdiction, supra,* the court refers to cases *publici juris* but not involving the sovereignty of the state and says that in those cases a very strong showing of exigency must be made before this court will assume original jurisdiction. In considering this whole subject it must be remembered that the original notion of the narrow scope of the jurisdiction was as much a part of the thesis of the *Railroad Cases* as was the intimation that this jurisdiction was exclusive. In the later development of the field this court, while carefully avoiding any act that would undermine the jurisdiction of the circuit courts or throw the administration of justice into confusion, has been able to be of service to the state by promptly and authoritatively determining in original actions cases *publici juris* but involving none of the elements of prerogative or sovereignty. That this is a useful development cannot be denied. That it is an inevitable consequence of the fact that the boundaries of the so-called "prerogative and sovereignty" limitation are impractical and difficult to maintain with any degree of certainty is also evident.

Reference is made to an article in 21 Columbia Law Review, 554, by Sir William Holdsworth on *The Prerogative in the 16th Century,* and one in 32 Yale Law Journal, 532, by Edward Jenks on *The Prerogative Writs in English Law.* No effort will be made here to analyze these articles, but a cursory reading of them will establish quite readily that the scope of the prerogative and of the prerogative writs is a subject of great complexity and one that cannot be simplified without a loss of historical accuracy. When the attempt is made to translate English prerogative into American terms merely by substituting the people or the state for the king, still further difficulties present themselves, and it may confidently be stated that if the term "prerogative" is to mean something narrower than a question of great public interest affecting all the state importantly, then its boundaries are in confusion and the jurisdiction of this court and the circuit courts in the field are equally so. There being no standard by which the scope of the prerogative powers may readily be ascertained, and the court having declared that each case must be determined upon its own merits, there will be few cases in which the jurisdiction of the circuit court to issue the writs over which they have been expressly given jurisdiction by the constitution can be ascertained if there is any degree of public interest involved except by appealing each such case and having this court determine whether or not the matter was one so involving prerogative or sovereignty as to fall exclusively within the jurisdiction of this court. This would create an intolerable situation and one which it ought not to be supposed that the constitution intended to create. This court having departed from the early notion that its powers were limited to cases involving prerogative and sovereignty, and the jurisdiction having been extended to cases in which the court has assumed that the circuit court also had jurisdiction, we think that the key to the true rule has been

discovered. We think it must follow from the later cases in this court that sec. 3, art. VII, of the constitution, contemplates that the supreme court exercise its judgment and discretion in taking jurisdiction of cases so importantly affecting the rights and liberties of the people of this state as to warrant such intervention. Since it was the clear mandate of the constitution that the supreme court be the supreme judicial tribunal of the state, it follows that when original jurisdiction is taken it excludes the jurisdiction of every inferior tribunal to deal with the same subject matter and thus to dissipate or weaken the original jurisdiction. In this sense the jurisdiction of the court is exclusive, although it would seem to be better described as excluding rather than exclusive. Hence, there is attached to the original jurisdiction to give it supremacy and transcendence the power instantly to restrain and put at naught any interfering or conflicting action by any inferior court whether pre-existing or taken after this court has assumed jurisdiction. This is precisely what this court did in *State ex rel. Barber v. Circuit Court,* 178 Wis. 468, 190 N. W. 563. This was an application for a writ of prohibition. The matter was already pending in the circuit court and no objection had been made to the jurisdiction of that court to try the action. The case had to do with the nomination of a party ticket, and it was necessary to decide the case before election. It was held that the matter was of sufficient importance to call for the exercise of the original jurisdiction, and that it could not be disposed of by the circuit court and appealed to this court in time for the final judgment to be of any practical effect. This was considered a sufficient reason for taking jurisdiction and excluding the circuit court from the exercise of further jurisdiction. See also *Petition of Price, supra.*

It is, therefore, our conclusion, (1) that the circuit courts have concurrent jurisdiction with this court to issue all of

the prerogative writs named in the constitution in the sense that until this court acts the circuit courts may issue such writs for whatever purpose prerogative writs are proper; and (2) that when this court in the exercise of its judgment and discretion grants an application to commence an original action in this court upon the ground that the questions presented are of such importance as under the circumstances to call for a speedy and authoritative determination by this court in the first instance, this court then takes exclusive jurisdiction of the action, and that in aid of this jurisdiction it may exclude, set at naught, and suspend any action or proceeding in any circuit court involving the same subject matter. This view makes it possible for this court to accomplish every important purpose considered by the early cases to be involved in the grant of original jurisdiction. It preserves the supremacy of the jurisdiction of this court, prevents the dissipation of power by scattering it among the several circuit courts, and enables this court by a broader view of its powers to be of service to the state in a larger number of cases. These conclusions do not in every instance square with the language of some of our decisions, but they do not require the overruling of a previous decision, except possibly in one instance. The decision in the *Income Tax Cases, supra,* is cited as having held, the matter being directly involved, that the circuit court had no jurisdiction in prerogative matters. In one of the cases there involved the circuit court, as heretofore stated, had sustained a demurrer upon the ground of want of jurisdiction. This court affirmed the order and said (p. 518):

"It would seem, *a fortiori,* that no taxpayer's action should be entertained in the circuit court where the purpose is to halt the auditing and disbursing officers of the state. We regard this as the better administration. It is enough that this court has the power to authorize such an action if the exigency demands. To divide up that power and scatter it

among the trial courts of the state, and allow every such court to judge of the exigency, might well lead to the bringing of many improvident actions. It is fitting that such an extreme power be vested in this court alone."

It seems to us that this statement is far from an unequivocal holding that there was a want of jurisdiction in the circuit court. It appears rather to hold that in the interests of sound administrative policy the power should generally not be exercised by the circuit court. The court further said, at page 502:

"To arrest the hand of a state officer as he is about to carry out the command of the legislature is indeed a serious step, one not to be taken summarily or without profound consideration. As the power is great, it should be exercised with a wisdom and discretion commensurate with its greatness. No trivial grounds should impel the court to permit its exercise. This court will certainly not feel obliged in every case where there is a threatened expenditure of state funds under a law of doubtful constitutionality to allow an action of this nature to be brought in the name of the state, but will feel entirely free to leave the question of constitutionality to be settled as it may arise in ordinary litigation. The defiance of express or implied constitutional commands may be so flagrant and patent as to make the exercise of this great power appear justifiable, if not absolutely necessary, and in such case it will be exercised courageously. This court will, however, judge of the exigency in each case as it arises, and will endeavor to guard the great power from being used in trifling cases or to accomplish ulterior purposes."

The foregoing statement indicates that this court will only take the exceptional or flagrant cases. If so, the jurisdiction must be in the circuit court to try such cases unless this court elects to entertain them and exclude further proceedings below.

The foregoing considerations compel us to conclude that the circuit court had jurisdiction of the cause pending there,

proceedings which are sought to be restrained under the power of superintending control.

It only remains to be said that in cases where it is doubtful whether the excluding jurisdiction of the supreme court will be exercised the determination must be made on the basis of the nature of the issues involved rather than upon a mere consideration of convenience or expediency. This court is primarily an appellate court, and it should not be burdened with matters not clearly within its province if it is to discharge in a proper and efficient manner its primary function. Mere expedition of causes, convenience of parties to actions, and the prevention of a multiplicity of suits are matters which form no basis for the exercise of original jurisdiction of this court. Because it is the principal function of the circuit court to try cases and of this court to review cases which have been tried, due regard should be had to these fundamental considerations. Inasmuch as under the principles established the circuit court has jurisdiction to proceed, the excluding jurisdiction of this court will not be exercised in doubtful cases. *Application of Zabel,* 219 Wis. 49, 261 N. W. 669.

A careful consideration of the opinion of the court in *In re Exercise of Original Jurisdiction, supra,* and the opinion in this case make the matter of jurisdiction as between the circuit and supreme courts as definite as it is possible to make it. We make these specific references to this matter because of the fact that applications to this court for the exercise of its original jurisdiction which are denied, of which there have been a goodly number, do not for obvious reasons find their way into the reports save in a few exceptional cases.

As already appears, the mandate of the court has been entered of record.