2013 WI 91

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2067

STATE OF WISCONSIN       :    IN SUPREME COURT

**Madison Teachers, Inc., Peggy Coyne, Public Employees Local 61, AFL-CIO and John Weigman,**

      **Plaintiffs-Respondents,**

  **v.**

**Scott Walker, James R. Scott, Judith Neumann and Rodney G. Pasch,**

      **Defendants-Appellants.**

**FILED**

**Nov 21, 2013**

Diane M. Fremgen
Clerk of Supreme Court

¶1 PER CURIAM. This case is currently pending before us on a certification from the court of appeals. Madison Teachers, Inc. v. Scott Walker, No. 2012AP2067 (Wis. Ct. App. April 25, 2013). That certification presents a number of constitutional questions related to the September 14, 2012, declaratory judgment of the Dane County Circuit Court.[1] During the pendency of the appeal, the circuit court held Defendant-Appellants James R. Scott and Rodney G. Pasch (collectively, "Commissioners") in contempt. Thereafter, Scott Walker, James R. Scott, Judith

---

[1] Judge Juan B. Colas presiding.

Neumann, and Rodney G. Pasch (collectively "State Defendants") brought an emergency motion to stay the contempt order in the court of appeals, which the court of appeals denied. The State Defendants now petition this court to stay declaratory judgment and any subsequent circuit court orders.

¶2 We do not rule on the stay of the September 2012 declaratory judgment. However, for the reasons discussed in this opinion, we conclude that the contempt order issued subsequent to the appeal from the circuit court declaratory judgment constituted an impermissible interference with the appellate jurisdiction of this court. We therefore exercise our superintending authority to vacate the contempt order, which renders the State Defendants' motion to stay the contempt order moot.

## I. BACKGROUND

¶3 On August 24, 2011, Plaintiff-Respondents Madison Teachers, Inc., Peggy Coyne, Public Employees Local 61, AFL-CIO, and John Weigman (collectively "MTI Plaintiffs") filed an amended complaint in Dane County Circuit Court seeking a declaration that certain portions of 2011 Wis. Acts 10 and 32 violated the Wisconsin Constitution and asking for injunctive relief. On September 14, 2012, the court issued a decision and order ("September 2012 declaratory judgment") that granted partial summary judgment to the MTI Plaintiffs. It granted declaratory, but not injunctive, relief.

¶4 On September 18, 2012, the State Defendants timely filed a notice of appeal from the September 2012 declaratory

2

judgment. On October 11, 2012, the record was transmitted to the court of appeals.

¶5 After appealing, the State Defendants filed a motion to stay the September 2012 declaratory judgment pending appeal in the circuit court, pursuant to Wis. Stats. §§ 808.07(2)(a)(3) and 809.12. On October 22, 2012, the circuit court denied that motion.

¶6 On October 25, 2012, the State Defendants moved the court of appeals for a stay pending appeal, which the court of appeals denied.

¶7 On April 25, 2013, the court of appeals certified the appeal of the September 2012 declaratory judgment to this court. On June 14, 2013, we accepted certification of the appeal.

¶8 On April 23, 2013, just prior to certification of the appeal by the court of appeals, the MTI Plaintiffs asked the circuit court for an injunction for a second time. On September 17, 2013, the circuit court denied injunctive relief, reasoning that the State Defendants' continued enforcement of Acts 10 and 32 against non-parties was not harming MTI plaintiffs.

¶9 On September 24, 2013, without moving to intervene, the Wisconsin Education Association Council, AFT-Wisconsin, AFL-CIO, AFL-CIO District Council 40, SEIU Healthcare Wisconsin, CTW, CLC, Wisconsin Federation of Nurses and Healthcare Professionals, AFSCME, and the Kenosha Education Association (collectively "Non-Party Unions") moved the circuit court to hold the Commissioners in contempt and for remedial sanctions. The Non-Party Unions argued that the Commissioners' continued

3

enforcement of the challenged portions of Acts 10 and 32 against them constituted intentional disobedience of the circuit court's September 2012 declaratory judgment.[2]

¶10 On October 21, 2013, the circuit court, in an oral ruling, held the Commissioners in contempt of the September 2012 declaratory judgment. On October 25, the circuit court filed a written contempt order, in which it detailed the conditions that the Commissioners would have to meet to purge the contempt. Among those conditions was a total halt to the enforcement of the challenged portions of Acts 10 and 32 against all non-parties.

¶11 On October 25, 2013, the State Defendants filed emergency motions in this court and in the court of appeals. In the court of appeals, the State Defendants sought a stay of the circuit court's contempt order pending appeal, pursuant to Wis. Stats. §§ 808.07(2)(a)1 and 809.12. In this court, the State Defendants sought an emergency stay of the effect of the September 2012 declaratory judgment and a stay of enforcement of circuit court orders issued subsequent to that judgment, pursuant to Wis. Stats. §§ 808.07(2)(a)1 and 809.12, which is now before us.

---

[2] Several of the Non-Party Unions previously litigated the constitutionality of Act 10 in another court and lost on those challenges. See Wis. Educ. Ass'n Council v. Walker, 705 F.3d 640 (7th Cir. 2013), in which AFT-WI, AFL-CIO and Dist. Council 40, AFSCME, AFL-CIO, participated.

4

¶12 On October 28, 2013, the court of appeals entered an order requesting a response brief from the Non-Party Unions on the motion for a stay of the contempt order pending appeal. The court of appeals also announced its intention to decide the stay issue by November 4, 2013. The next day, this court entered an order indicating that we would take no action on the request for emergency relief before us until after the court of appeals had issued its decision.

¶13 On November 4, 2013, the court of appeals denied the State Defendants' motion for a stay of the contempt order pending appeal of that order.[3] On November 5, the State Defendants renewed their request for relief from the September 2012 declaratory judgment in this court, and further requested relief from the contempt order.

¶14 On November 7, 2013, the Non-Party Unions moved this court for permission to participate in oral argument and to intervene in the action pending before us. On November 8, 2013, the Non-Party Unions filed briefs in this court. We heard their positions and did not strike their briefs. On November 8, 2013, we denied the Non-Party Unions' motion because it was not timely brought.

¶15 The State Defendants have brought two pending and related matters before this court and have asked for relief. First, the State Defendants ask this court to stay the circuit

---

[3] Madison Teachers, Inc. v. Scott Walker, No. 2013AP2405 (Ct. App. Nov. 4, 2013).

5

court's October 25, 2013, contempt order.  Second, the State Defendants request a stay of the circuit court's September 14, 2012, declaratory judgment holding certain portions of 2011 Wis. Acts 10 and 32 unconstitutional.  The State Defendants list alternate sources of authority upon which the relief they request may be granted.  We now deny the State Defendants' motion to stay the declaratory judgment and exercise our superintending authority to vacate the contempt order because it interferes with our appellate jurisdiction.

## II.  ANALYSIS

¶16  Article VII, Section 3 of the Wisconsin Constitution vests this court with superintending authority over all Wisconsin courts.[4]  This authority "is as broad and as flexible as necessary to insure the due administration of justice in the courts of this state."  In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975); see also Arneson v. Jezwinski, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996) (our superintending authority "endows this court with a power that is indefinite in character, unsupplied with means and instrumentalities, and limited only by the necessities of justice").  It authorizes us "to control the course of ordinary litigation in the lower courts of Wisconsin."  Arneson, 206 Wis. 2d at 226.  Because this court's superintending authority flows from the Wisconsin

---

[4] Article VII, Section 3 of the Wisconsin Constitution provides in pertinent part: "The supreme court shall have superintending and administrative authority over all courts."

Constitution, the legislature may not limit that authority.  See State v. Pollard, 112 Wis. 232, 236, 87 N.W. 1107 (1901).

¶17  It is well established that this court may protect its appellate jurisdiction by the exercise of its superintending authority.  See Petition of Heil, 230 Wis. 428, 433, 284 N.W. 42 (1938) (declaring that this court "upon its own motion may undoubtedly protect its jurisdiction by the exercise of superintending control"); see also Prof. Jay E. Grenig, 1 Wisconsin Pleading & Practice Forms § 2:52 (5th ed. 2013).  We have previously exercised our superintending authority to review a circuit court's order of contempt.  See State ex rel. Reynolds v. Cnty. Court of Kenosha Cnty., 11 Wis. 2d 560, 566, 105 N.W.2d 876 (1960) (concluding that the "importance of the issues involved" merited exercise of the court's superintending authority).  Because the contempt order in the present case expanded the scope of the judgment that is before us on appeal, we exercise our superintending authority to vacate the contempt order.

¶18 Once a Notice of Appeal has been filed with the circuit court and the record has been transmitted to the court of appeals, a circuit court's authority is limited.  Wis. Stat. § 808.075(3) (a circuit court "retains the power to act on all issues until the record has been transmitted to the court of appeals").  "An appeal from a judgment or order strips the trial court of jurisdiction with respect to the subject matter of the judgment or order, except in certain unsubstantial and trivial matters," unless explicit contrary authority is noted in the

7

statutes. See In re Estate of Mayer, 29 Wis. 2d 497, 505, 139 N.W.2d 111 (1966).

¶19 The September 2012 judgment declared that certain portions of Acts 10 and 32 were unconstitutional, stating:

> For the reasons stated above, the court grants summary judgment in favor of the plaintiffs, denies the defendants' motion for judgment on the pleadings and declares that Wis. Stat. §§ 66.0506, 118.245, 111.70(1)(f), 111.70(3g), 111.70(4)(mb) and 111.70(4)(d)3 violate the Wisconsin and United States Constitution, and Wis. Stat. § 62.623 violates the Wisconsin Constitution and all [sic] null and void. This is a final order as defined by Wis. Stat. § 808.03(1) for purposes of appeal.

It did not grant the injunctive relief that MTI Plaintiffs had requested.

¶20 When the circuit court issued its contempt order more than a year after the record had been transmitted to the court of appeals and after we had accepted certification of the appeal, it expanded the scope of the September 2012 declaratory judgment by granting injunctive relief to non-parties. That is, by requiring the Commissioners to cease application of MERA against non-parties in order to purge the contempt order, the circuit court granted different relief than it originally granted in the September 2012 order.[5]

---

[5] "[J]udicial remedies fall into four major categories: damages remedies, restitutionary remedies, coercive remedies (such as injunctions that are backed by the court's contempt power) and declaratory remedies." Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶40, 264 Wis. 2d 60, 665 N.W.2d 257 (citing Dobbs, Handbook on the Law of Remedies, § 1.1 at 1 (1973)).

¶21 We are mindful of the pressures a circuit court can face from aggressive litigation in high-profile cases. However, when the appeal of a circuit court's prior decision is pending before this court, the circuit court must take care to avoid actions that may interfere with the pending appeal. Once an appeal had been perfected, the circuit court should not have taken any action that significantly altered its judgment. Accordingly, in order to assure the orderly administration of justice in the pending appeal, we elect to apply our superintending authority and vacate the circuit court's contempt order.

*By the Court.*—The contempt order of the circuit court is vacated.

¶22 SHIRLEY S. ABRAHAMSON, C.J. and ANN WALSH BRADLEY, J. *(dissenting).* Essential to our system of justice is adherence to the rule of law. The per curiam today attempts to transform the rule of law into an untenable rule of defiance: government officials who are defendants in a case need not obey a court's declaratory judgment that precludes enforcement of a facially unconstitutional statute.

¶23 A novel case such as this one, involving issues of great national importance and core constitutional rights, deserves a well-reasoned and well-supported decision. Instead, the per curiam's numerous legal errors demonstrate a disregard for the law and muddy the waters of our jurisprudence. Perhaps the most troubling aspect of today's decision is that the court inflates its own power while disrespecting the authority of the circuit court and the court of appeals, as well as the judicial process.

¶24 The court's per curiam opinion today discards the longstanding law of this state. First, it authorizes the executive to disobey the declaratory judgments of the judiciary. Second, it strips circuit courts of the ability to protect those judgments. Third, it ignores our prior restraint in applying our broad superintending powers to ordinary circumstances.

¶25 Further, the process utilized by the per curiam is fundamentally unfair. The process denied the six respondent unions[1] the opportunity to be heard at the oral argument

---

[1] Wisconsin Education Association Council; AFT-Wisconsin, AFL-CIO; SEIU Healthcare Wisconsin, CTW, CLC; Wisconsin

(continued)

1

regarding their motion for contempt. By fashioning its own remedy based on a novel approach neither briefed nor argued by anyone in this case, the per curiam has also denied the rights of all parties to be heard.

¶26 The per curiam decision, contrary to the law and procedure of this state, leaves in its wake unanswered questions that will cause confusion and uncertainty. The extreme measures the per curiam has taken to vacate the contempt order suggest it has seen fit to reach its outcome through whatever means necessary, rather than through the cautious and measured deliberation this court traditionally applies when reviewing all cases.

¶27 Accordingly, we respectfully dissent.

I

¶28 The per curiam ignores the well-established law that when a declaratory judgment is entered against state officers, it is the practical equivalent of an injunction against those officers. It is only by ignoring this well-established precedent that the per curiam is able to make the claim that the October 2013 contempt order interfered with its appellate jurisdiction by expanding the scope of the original declaratory judgment.

---

Federation of Nurses and Health Care Professionals, AFT, AFL-CIO; Kenosha Education Association; and District Council 40, AFSCME, AFL-CIO. Hereinafter, we refer to them collectively as "respondent unions" as did the court of appeals. See In re the Contempt in Madison Teachers, Inc. v. Walker, Case No. 2013AP2405, unpublished order at 3 (Wis. Ct. App. Nov. 4, 2013).

¶29 If there is adherence to the rule of law, the per curiam's claim cannot survive scrutiny.

¶30 The per curiam asserts that "[w]hen the circuit court issued its contempt order . . . , it expanded the scope of the September 2012 declaratory judgment by granting injunctive relief to non-parties. That is, by requiring the Commissioners to cease application of MERA against non-parties in order to purge the contempt order, the circuit court granted different relief than it originally granted in the September 2012 order." Per curiam op., ¶20.

¶31 The contempt order did not expand the scope of the September 2012 judgment. There is no difference in relief. The injunctive relief granted in the contempt order is legally no different in practical effect than the relief granted in the declaratory judgment.

¶32 The United States Supreme Court has adhered to this rule of law for decades.[2] Then-Judge Scalia aptly described it as follows: "[T]he discretionary relief of declaratory judgment is, in a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal

---

[2] See, e.g., Samuels v. Mackell, 401 U.S. 66, 72 (1971) (holding that the creation of potential remedies after issuance of the declaratory judgment pending appeal "has virtually the same practical impact as a formal injunction would"); see also Samuel L. Bray, The Myth of the Mild Declaratory Judgment, 63 Duke L.J. at 38, forthcoming 2014 ("[I]n many cases where a plaintiff seeks prospective relief, a declaratory judgment and an injunction are functionally interchangeable. Both resolve uncertainty about the law and both bind the losing party.").

3

officers will adhere to the law as declared by the court." Sanchez-Espinoza v. Reagan, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985).

¶33 The rationale underlying the rule that a declaratory judgment against a government officer is the functional equivalent of an injunction rests on the premise that the government official will adhere to a judicial decision declaring a statute facially unconstitutional. "[W]e have long presumed that officials of the Executive Branch will adhere to the law as declared by the court. As a result, the declaratory judgment is the functional equivalent of an injunction." Committee on Judiciary of U.S. House of Representatives v. Miers, 542 F.3d 909, 911 (D.C. Cir. 2008).[3]

¶34 Likewise, the Wisconsin Supreme Court has acknowledged this well-established precedent. Just a few years ago, in an opinion authored by Justice Prosser, the court explained the import of a declaratory judgment that declares a statute unconstitutional on its face: "[t]he state may not enforce it under any circumstances, unless an appropriate court narrows its

---

[3] See also Mark P. Gergen, John M. Golden & Henry E. Smith, The Supreme Court's Accidental Revolution? The Test for Permanent Injunctions, 112 Colum. L. Rev. 203, 206, 241 (2012) (noting that courts have determined no additional requirements are needed to render a declaratory judgment effective against a government actor unless "a party cannot be trusted to respect rights in the future," thus requiring an injunction); Virginia ex rel. Cuccinelli v. Sebelius, 728 F. Supp. 2d 768, 790 (E.D. Va. 2010), vacated on other grounds, 656 F.3d 253 (4th Cir. 2011) (holding that "the award of declaratory judgment is sufficient to stay the hand of the Executive branch pending appellate review").

application." Olson v. Town of Cottage Grove, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211 (emphasis added) (quoting Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 236 (1994)).[4]

¶35 As this court then recognized, a declaratory judgment that determines that a statute is unconstitutional on its face means that the statute "always operates unconstitutionally." Olson, 309 Wis. 2d 365, ¶44 n.9  Because it is always unconstitutional, such a declaration of unconstitutionality has the practical effect of an injunction as a state defendant is prohibited from enforcing the statute.  See Maness v. Meyers, 419 U.S. 449, 458-59 (1975); State v. Konrath, 218 Wis. 2d 290, 304 n.13, 577 N.W.2d 601 (1998).

¶36 Now, the per curiam does an about-face on the law.  It attempts to transform the rule of law into an untenable rule of defiance: government officials who are defendants in a case need not obey a court's declaratory judgment that precludes them from enforcing facially unconstitutional statutes.

¶37 "A declaratory judgment is binding on the parties before the court." 10B Fed. Prac. & Proc. Civ. § 2771 (Wright & Miller, 3d ed. 2013) (emphasis added).  The Commissioners were clearly parties before the court when the circuit court granted its September 2012 summary judgment determining that several statutory sections were facially unconstitutional and therefore

---

[4] See also State v. Konrath, 218 Wis. 2d 290, 304 n.13, 577 N.W.2d 601 (1998); Poe v. Gerstein, 417 U.S. 281, 281-82 (1974).

"null and void."[5]  Because the unconstitutional "null and void"
provisions cannot be legally enforced, the defendant
Commissioners were precluded from enforcing those provisions.

¶38  On October 22, 2012, the circuit court reiterated the
binding effect of its declaratory judgment upon the
Commissioners by denying their motion to stay the judgment.  The
primary ground for the denial was that if a stay were granted,
"the plaintiffs (and tens of thousands of municipal employees)
will have suffered irreparable harm in the form of continued
violation of their fundamental constitutional rights by their
government."[6]  Thus, the circuit court indicated that the order
bound the Commissioners as to all municipal employees.

¶39  On September 17, 2013, the circuit court explicitly
told the WERC Commissioners that they "are bound by the court's
judgment, even with respect to their actions toward non-
parties."  Madison Teachers, Inc. v. Walker, No. 2011CV3774,
unpublished order at 3 (Dane Cnty. Cir. Ct. Sept. 17, 2013.

¶40  Accordingly,  the  contempt  order  prohibiting  the
Commissioners from enforcing the disputed provisions of Act 10
did not expand the scope of the September 14, 2012 judgment; it
merely restated what the WERC Commissioners already knew: the

---

[5] The uniform declaratory judgments act makes clear that
circuit courts "shall have power to declare rights, status, and
other legal relations whether or not further relief is or could
be claimed."  Wis. Stat. § 806.04(1).  The statute further
states that the declaration "shall have the force and effect of
a final judgment or decree . . . ." Wis. Stat. § 806.04(1).

[6] Madison  Teachers,  Inc.  v.  Walker,  No.  2011CV3774,
unpublished  order  at  6  (Dane  Cnty.  Cir.  Ct.  Oct.  22,  2012)
(emphasis added).

statutes were null and void and they were precluded from enforcement as to all persons.

¶41 This court has previously emphasized the importance of declaratory judgments in their effect on government actions towards all affected parties, not merely the parties to the suit:

> We have not construed Wis. Stat. § 806.04(11) to require "that where a declaratory judgment as to the validity of a statute or ordinance is sought, every person whose interests are affected by the statute or ordinance must be made a party to the action." If the statute "were so construed, the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people."

Helgeland v. Wisconsin Municipalities, 2008 WI 9, ¶140, 307 Wis. 2d 1, 745 N.W.2d 1 (quoting Town of Blooming Grove v. City of Madison, 275 Wis. 328, 334, 81 N.W.2d 713 (1957)).

¶42 The per curiam holding today would seem to require every individual person or organization affected by Act 10 to litigate a separate suit, eliminating the efficiency benefits and practicality of declaratory judgment as applied to a governmental actor. Such duplicative litigation is unworkable.[7]

---

[7] Additionally, such duplicative litigation appears to be unnecessary because defiance, whether by government or non-government parties, of a court's declaratory judgment appears exceedingly rare:

> What is quite rare is . . . the situation where a plaintiff wins a declaratory judgment, the defendant disobeys, and the plaintiff goes back to court to get an injunction. In fact, the total number of cases with published opinions involving that fact pattern

(continued)

¶43 The oft-stated, oft-repeated legal maxim is clear: declaratory judgments are treated functionally as injunctions, when applied to governmental parties who are bound by the force and meaning of judgments under the law. Contrary to the claim of the per curiam, the circuit court did not "fundamentally alter[]" the September 2012 order, per curiam op., ¶21; it merely sought to enforce the proper legal effect of its declaratory judgment. The WERC Commissioners, who are party defendants, cannot enforce a statute that the judiciary has found facially unconstitutional.

## II

¶44 The per curiam opinion strips not only the circuit court judge in this case, but all judges, of important statutory authority to enforce their lawful judgments.

¶45 This case is not about whether a Dane County circuit court judgment can bind other circuit courts throughout the state. It is not about the ability of a circuit court to bind non-parties to an action. Rather, this case is about the ability of a circuit court judge to issue a judgment that binds government officials who are parties in an action before the court and the authority of a circuit court judge to enforce its judgment.

---

under Section 2202 appears to be roughly a dozen [out of thousands] . . . . The meager use of this provision throughout its nearly eighty-year history shows that there is no pattern of disregarded declaratory judgments."

Samuel L. Bray, The Myth of the Mild Declaratory Judgment, 63 Duke L.J. at 25-26, forthcoming 2014.

8

¶46 Specifically, the per curiam strips the circuit court of its statutory authority to protect its September 14, 2012 judgment with a contempt order, asserting that the circuit court's power during an appeal starts and ends with Wis. Stat. § 808.075(3). Per curiam op., ¶18. However, it relies on the first portion of that subsection ("the circuit court retains the power to act on all issues until the record has been transmitted to the court of appeals") and conveniently ignores the sentence that follows: "Thereafter, the circuit court may act only as provided in subs. (1) and (4)." Wis. Stat. § 808.075(3).

¶47 The circuit court retains broad powers under subsection (1).[8] During an appeal a circuit court is specifically permitted to act under Wis. Stat. § 808.07(1) and (2). Wis. Stat. § 808.075(1). Wisconsin Stat. § 808.07[9] lists a

---

[8] Wisconsin Stat. § 808.075(1) provides: "In any case, whether or not an appeal is pending, the circuit court may act under ss. 804.02(2), 805.15, 805.16, 805.17(3), 806.07, 806.08, 806.15(2), 806.24(4), 808.07(1) and (2) and 809.12."

[9] Wisconsin Stat. § 808.07(2) states:

(2) AUTHORITY OF A COURT TO GRANT RELIEF PENDING APPEAL.

(a) During the pendency of an appeal, a trial court or an appellate court may:

1. Stay execution or enforcement of a judgment or order;

2. Suspend, modify, restore or grant an injunction; or

3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

(continued)

9

number of actions a circuit court may take during the pendency of an appeal, including "[m]ak[ing] <u>any order</u> appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered." Wis. Stat. § 808.07(2)(a)3 (emphasis added).

¶48 In this case, the circuit court used the tool of sanctions for civil contempt, defined under the statute as "disobedience, resistance, or obstruction of the authority, process or order of a court." Wis. Stat. § 785.01(b). The Commissioners disobeyed the order of the court by continuing to enforce a statute despite the declaratory judgment rendering that statute null and void. The circuit court subsequently imposed sanctions.

¶49 Nowhere in the statutes governing contempt does the law state that circuit courts' authority to "preserve the effectiveness of the judgment" is restricted by the pendency of an appeal, especially in the face of disobedience of a court mandate. Indeed, for this underlying assertion, the per curiam points to no authority whatsoever.

¶50 No case law requires us to hew to a formalistic reading of contempt that requires a formal injunction proceeding before contempt can lie.[10] Such a requirement would severely

---

(am) During the pendency of an appeal, the trial court may hear and determine a motion filed under s. 806.07.

[10] "It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with
(continued)

circumscribe a court's authority to remedy a disobedience of its orders and judgments.

¶51 Furthermore, the circuit court here was well within its authority to entertain motions by the respondent unions that were not parties to the original lawsuit. The contempt statute specifies that one need not be a party to the action in order to file a contempt motion: "[a] person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related." Wis. Stat. § 785.03(1)(a). The Wisconsin Judicial Council comments to Wis. Stat. § 785.03 define a "person aggrieved" as follows: "Any person aggrieved by the contempt, even one not a party to the principal proceeding." Judicial Council Committee's Note, 1979, § 785.03, Stats.

¶52 The circuit court is statutorily empowered to enforce its original declaratory judgment by any order. If there is a pending appeal, it is still empowered to act under Wis. Stat. § 808.07(2)(a)3. Here, the circuit court carefully followed the statutory bounds of its authority pending appeal and attempted to manage the case to maintain the status quo. Indeed the per curiam opinion cannot point to a single jurisdictional or legal error made by the circuit court.

III

¶53 The WERC Commissioners requested a stay of the contempt order. The per curiam grants the Commissioners more

---

disobedience of the law." McComb v. Jacksonville Paper Co., 336 U.S. 187, 192 (1949).

11

than they requested: the majority <u>vacates</u> the contempt order. Why? Because if the per curiam were to follow the rules applicable to a stay it would have to reach the same result as the court of appeals:[11] "No stay."

¶54  Thus, the per curiam, without the benefit of briefs or argument on the issue of superintending power and vacating the contempt order, <u>vacates</u> the contempt order under the court's superintending powers.[12]

¶55  The per curiam doubly errs:  First, the use of the court's superintending power in the present case violates the teachings of all the cases the per curiam cites (and then some) about the nature and function of the constitutional superintending power.  Second, as we have discussed, no grounds exist, regardless of the procedural maneuver the per curiam uses, for this court to vacate the contempt order in the present case.  The circuit court acted within its statutory and constitutional authority to issue the contempt order.

---

[11] <u>In re Contempt in Madison Teachers, Inc. v. Walker</u>, No. 2013AP2405, unpublished order (Wis. Ct. App. Nov. 4, 2013).

[12] In 1848, Article VII, Section 3 of the Wisconsin Constitution provided:  "The supreme court shall have general superintending control over all inferior courts . . . ."

The present Article VII, Section 3 provides in relevant part:  "The supreme court shall have superintending and administrative authority over all courts. . . ."

For an historical discussion of the court's superintending power, see James D. Wickhem, <u>The Power of Superintending Control of the Wisconsin Supreme Court</u>, 1941 Wis. L. Rev. 153.

¶56 The per curiam opinion today sets a dangerous precedent: The per curiam tosses aside procedural rules, long-standing self-imposed limits on the court's superintending powers, and legal analysis and explanation in favor of a facile resolution, disregarding the wisdom of our jurisprudence.

¶57 The case law admonishes us to limit use of the superintending power to situations in which:

(1)  there is no other adequate remedy, by appeal or otherwise;[13]

(2)  the conduct of the trial court threatens seriously to impose a significant hardship upon a citizen;[14] or

(3)  it is required by the exigency of the circumstances.[15]

---

[13] This court "will not exercise its [superintending] jurisdiction when there is another adequate remedy, by appeal or otherwise." State ex rel. Reynolds v. County Court of Kenosha County, 11 Wis. 2d 560, 565, 105 N.W.2d 876 (1960); see also State ex rel. Hustisford Light, Power & Mfg. Co. v. Grimm, 208 Wis. 366, 371, 243 N.W. 763 (1932) ("In the event that the attempt is made to invoke the superintending power to correct an error of the trial court, it is necessary to establish that an appeal from a final judgment is inadequate . . . . ").

[14] "[T]he purpose of [superintending] jurisdiction is the protection of a person in his rights as litigant." In re Kading, 70 Wis. 2d 508, 520, 235 N.W. 409 (1975) (internal quotations omitted) (quoting Petition of Heil, 230 Wis. 428, 433, 284 N.W. 42 (1939)).

[15] This court has historically used its superintending power only when the exigency is of such an extreme nature as to justify the extraordinary superintending powers of this court. See State ex rel. Reynolds v. County Court of Kenosha Cnty., 11 Wis. 2d 560, 565, 105 N.W. 876 (1960) (quoting State ex rel. Tewalt v. Pollard, 112 Wis. 232, 234, 87 N.W. 1107 (1901)) ("[T]his court will not exercise its [superintending] jurisdiction . . . unless the exigency is of such an extreme nature as obviously to justify and demand the interposition of
(continued)

¶58 The present case does not fit into any of these circumstances or any other circumstances justifying use of this extraordinary constitutional power to vacate a circuit court order before deciding the merits of the matter.

¶59 First, other adequate remedies, indeed the very remedies requested by the State, exist to address the contempt order. Yet the per curiam ignores these remedies without explanation:

- The court may grant relief pending appeal, pursuant to Wis. Stat. § 809.12 and Wis. Stat. § 808.07(2)(a)1.;

- The court may issue a supervisory writ pursuant to Wis. Stat. § 809.71;

- The court may take jurisdiction of the contempt proceedings pending in the court of appeals (case number 2013AP2405), on its own motion pursuant to Wis. Stat. § 809.61; or

- The WERC Commissioners could have sought to bypass the court of appeals with regard to the contempt proceedings pursuant to Wis. Stat. § 809.61.

¶60 Second, the per curiam fails to establish that a grave hardship will follow unless the contempt order is vacated.[16]

_____

the extraordinary superintending power of the court of last resort of the state.")(citations omitted.).

[16] _Arneson v. Jezwinski_, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996) ("This court will not exercise its superintending power . . . where the conduct of the trial court does not threaten seriously to impose a significant hardship upon a citizen.")(citations omitted). See also _State ex rel. Hustisford Light, Power & Mfg. Co. v. Grimm_, 208 Wis. 366, 371, 243 N.W. 763 (1932) ("In the event that the attempt is made to invoke the superintending power to correct an error of the trial

(continued)

14

¶60  Third, no exigency or emergency exists in the present case to justify the use of superintending powers.  The WERC Commissioners knew by reason of the September 14, 2012 declaratory judgment and the October 22, 2012 order[17] that the circuit court viewed its declaration of unconstitutionality as binding the Commissioners across the state.  WERC's contempt order in October 25, 2013, did not expand the scope of the judgment, as the per curiam erroneously claims, per curiam op., ¶¶17, 20.

¶61  In addition, the WERC Commissioners requested but did not get stays of the circuit court declaratory judgment in both the circuit court and court of appeals.  The stay was first denied by the circuit court on October 22, 2012[18] and then denied by the court of appeals on March 13, 2013.[19]  The WERC Commissioners did not seek a stay in this court in the spring of 2013 or appeal the denials of the stay to this court.

¶62  The WERC Commissioners also knew that their continued enforcement of the null and void statute would create confusion across the state.  In December 2012, one year ago, over thirty

---

court, it is necessary to establish . . . that grave hardship will follow a refusal to exercise the power.").

[17] The circuit court declared that its declaratory judgment affects "the plaintiffs (and tens of thousands of municipal employees)." Madison Teachers, Inc. v. Walker, No. 2011CV3774, unpublished order at 6 (Dane Cnty. Cir. Ct. Oct. 22, 2012).

[18] Madison Teachers, Inc. v. Walker, No. 2011CV3774, unpublished order (Dane Cnty. Cir. Ct. Oct. 22, 2012).

[19] Madison Teachers, Inc. v. Walker, No. 2012AP2067, unpublished order (Wis. Ct. App. Mar. 13, 2013).

counties filed a petition with WERC asking "for a declaratory ruling . . . concerning the subjects of bargaining between municipal employees and represented employees in light of the Dane County Circuit Court's September 14, 2012 Final Order declaring certain statutory provisions of MERA unconstitutional."[20]

¶63 But the WERC Commissioners did not issue a clarifying ruling and did not seek clarification from the circuit court before enforcing the statute contrary to the explicit order of the declaratory judgment. Rather, WERC Commissioners just forged ahead enforcing a law that had been declared null and void, knowing the circuit court's position and the confusion of the municipalities.

¶64 These circumstances do not show an emergency this month requiring extraordinary steps by this court. Any emergency is of WERC's own making.

¶65 As a final and important point, the per curiam opinion does not, and cannot, demonstrate that the contempt order "constituted," as it claims, "an impermissible interference with the appellate jurisdiction of this court." Per curiam op., ¶2.

¶66 On the contrary, the rights and obligations of all persons affected by the September 14, 2012 circuit court declaratory judgment remain in effect after this per curiam,

_____

[20] Madison Teachers, Inc. v. Walker, Case No. 2013AP2405 (Wis. Ct. App.), Affidavit of Peter G. Davis, Chief Legal Counsel for the Wisconsin Employment Relations Commission, at 7.

16

regardless of vacating the contempt order. Per curiam op., ¶2 ("We do not rule on the stay of the September 2012 declaratory judgment."). Moreover, a cause of action against the WERC Commissioners for contempt still exists in the court of appeals.

¶67 The only threat to or impermissible interference with the appellate jurisdiction of this court and the orderly administration of justice has been WERC's continued enforcement of the statutory provisions after the circuit court's September 14, 2012 declaratory judgment declared them null and void.

¶68 Nothing in the instant case compels this court to use its superintending power or vacate the contempt order. The substance and tenor of the per curiam opinion make it appear that the majority, rather than the circuit court, has been pressured by "aggressive litigation in high-profile cases." Per curiam op., ¶21.

IV

¶69 We turn next to the per curiam's procedural errors.

¶70 First, the per curiam denied the respondent unions their fundamental opportunity to be heard in a proceeding regarding their dispute. By making misleading statements about the respondent unions' status, the per curiam attempts to justify this denial. It suggests that the respondent unions are non-parties that needed to intervene in order to present arguments regarding their contempt motion.[21] Per curiam op., ¶¶9, 14.

---

[21] For clarification, there are two related cases at issue here: case number 2012AP2067 and case number 2013AP2405. Case

(continued)

17

¶71 The respondent unions are parties to the contempt proceedings and were entitled to be heard. No one disputes that they are entitled to appear and argue their position—except the per curiam.

¶72 In fact, when the WERC Commissioners appealed the finding of contempt, the Commissioners listed the respondent unions in the caption of the pleadings. The court of appeals refers to them in its order as "respondent unions." In re the Contempt in Madison Teachers, Inc. v. Walker, Case No. 2013AP2405, unpublished order at 3 (Wis. Ct. App. Nov. 4, 2013).[22] Everyone acknowledges the respondent unions are parties to the contempt proceeding—except the per curiam.

¶73 Yet, at oral argument, no person spoke on the respondent unions' behalf. The respondent unions' motion to this court sought assurance that as a respondent in the contempt proceeding they would be able to speak at oral argument. They wanted to argue against the Commissioners' request to stay the very contempt order that the respondent unions had sought and obtained in case number 2013AP2405. They asked to intervene as parties to case number 2012AP2607 only as an alternative if

_____

number 2012AP2607 is the case before us involving review of the September 14, 2012 order. Case number 2013AP2405 is an appeal of the October 25, 2013 contempt order and is currently before the court of appeals.

[22] Though the court of appeals also refers to them as "non-party unions" in other portions of its order, it clarifies that it means "unions that were not among the original plaintiffs." In re the Contempt in Madison Teachers, Inc. v. Walker, Case No. 2013AP2405, unpublished order at 2 (Wis. Ct. App. Nov. 4, 2013).

18

their other motion was not granted. This court in an order issued late Friday night November 8, 2013, denied both requests.

¶74 We dissented from that order, fearing that the respondent unions that obtained the contempt order would be foreclosed from defending it. We observed that "any ruling regarding the contempt proceedings must include their voices."[23]

¶75 What we feared has now come to fruition. Rather than addressing the motion before it to stay the contempt order, the per curiam soldiers on and actually vacates the contempt order—exacerbating its denial of the respondent unions' opportunity to be heard.

¶76 In apparent recognition of its disregard for the due process rights of the respondent unions, the per curiam would have us believe that all is well. It notes that earlier in the day on Friday, November 8 (approximately six hours before an order issued denying them the opportunity to be heard), the respondent unions filed briefs in this court. The per curiam states, "We heard their positions and did not strike their briefs." Per curiam op., ¶14. However, not striking a brief is not the same thing as hearing the respondent unions' position.

¶77 It's curious that the briefs would be "heard" when hours later an order issued that denied the respondent unions an opportunity to participate. Why would members of the court read the briefs? They are not briefs of amicus curiae (friends of

---

[23] Madison Teachers, Inc. v. Walker, No. 2012AP2067, unpublished order (Wis. Sup. Ct. Nov. 8, 2013) (Abrahamson, C.J., Bradley, J., and Crooks, J. dissenting).

19

the court).  Nor does the per curiam view them as parties.  Does this mean that henceforth, members of this court will read any ol' brief that is filed in the office of the supreme court clerk even though the person or group filing the brief has no status or permission to file it or advance arguments?

¶78 Second, the per curiam further denied all parties the right to be heard on the substance of the per curiam order. What was before this court was a request to stay the contempt order, not a request to vacate it.  In the four and a half hours of oral argument and hundreds of pages of written briefs and orders, no one asked for the relief fashioned by the per curiam. Not one mention was made of the court's superintending power.

¶79 "Normally, a trial attorney should try his case and not expect the court sua sponte to try it for him."  Sass v. State, 63 Wis. 2d 92, 96, 216 N.W.2d 22 (1974).  If the court does decide to address an issue not raised by the parties, it should at least give them a chance to brief the issue.[24]  For example, just this week, after determining that a related issue

---

[24] See Day v. McDonough, 547 U.S. 198, 210 (2006) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions."); Bartus v. Dep't of Health & Social Servs., 176 Wis. 2d 1063, 1073, 501 N.W.2d 419 (1993) ("We therefore urge the courts to exercise caution when determining an issue sua sponte without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear."); Pub. Serv. Employees' Union v. Wisconsin Emp't Relations Bd., 246 Wis. 190, 198-99, 16 N.W.2d 823 (1944) ("A determination of this question would involve the decision of a number of matters of considerable importance. However, consideration of them is not urged upon us in briefs of counsel nor argued in any way. Under the well-established rule questions not argued will not be considered or decided.").

needed to be decided to fully address the merits of a petition before us, this court issued an order requesting additional briefing on the newly fashioned issue. <u>Attorney's Title Guaranty Fund, Inc. v. Town Bank</u>, No. 2011AP2774, unpublished order (Wis. Sup. Ct. Nov. 19, 2013).

¶80 When a court raises an issue sua sponte, "fairness requires that the parties have the opportunity to develop the relevant facts and to present legal arguments on the issue." <u>Hydrite Chem. Co. v. Aetna Cas. & Sur. Co.</u>, 220 Wis. 2d 26, 50, 582 N.W.2d 423 (Wis. Ct. App. 1998) (Roggensack, J. dissenting).[25] Apparently the Wisconsin Attorney General agrees. In another case the Attorney General has argued that it is inappropriate for an appellate court to "restructure[] [a] case to reach and decide matters that were never raised by the parties." <u>State v. Purtell</u>, No. 2012AP1307-CR, Petition for Review at 9 (Apr. 5, 2013). Here, the per curiam not only refused to hear the arguments of one side before making its decision, but it also refused to hear any argument from any one on its newly fashioned theories and remedy.

---

[25] <u>See also Wood v. Milyard</u>, ___ U.S. ___, 132 S. Ct. 1826, 1833-34 (2012) ("[A] federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system. . . . For good reason, appellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance. That restraint is all the more appropriate when the appellate court itself spots an issue the parties did not air below, and therefore would not have anticipated in developing their arguments on appeal.").

V

¶81 The order today essentially serves as a backdoor ruling on a substantive matter with no mention of the far-reaching effects of its order. The order creates a springboard for future uncertainty and litigation. Three glaring questions stand out: how will this affect (1) the unions that did not follow WERC's rules, relying on the declaratory judgment, (2) the unions that did follow WERC's rules, and (3) the contempt proceeding pending at the court of appeals?

¶82 First: What effect does today's order have on unions[26] that did not comply with WERC's emergency rules, relying on the longstanding rule that government actors cannot enforce null and void statutes?

¶83 What effect will the emergency rules have on unions' certification status? Will they automatically be recertified with the declaratory judgment in place?

¶84 When asked at oral argument what effect a stay would have on collective bargaining arrangements for any union that did not file its petition for certification by August 30, 2013, the State's counsel failed to answer, except to say that

---

[26] We currently know that the Kenosha Education Association did not file a petition by August 30, 2013. Madison Teachers, Inc. v. Walker, Case No. 2013AP2405 (Wis. Ct. App.), Affidavit of Timothy E. Hawks, exh. 2, at 1-3. An e-mail from Peter Davis indicates that other bargaining units have inquired on this exact topic. Id. at 1.

"ignorance of the law is no excuse."[27] The State's written filings similarly fail to answer this question.

¶85 Second: What effect does the court's order today have on the certification elections for public school teacher unions that complied with all WERC requirements but for whom elections will not occur by December 1, 2013?[28]

¶86 Will a failure to hold an election by December 1 affect the 401 unions representing more than 60,000 teachers that filed timely petitions by August 30, 2013, and for which WERC had already planned elections?[29] Does WERC have the authority to modify the statutory December 1 deadline?[30]

¶87 The WERC Commissioners' filings allege that WERC cannot perform the mandated elections for the unions that filed

---

[27] Madison Teachers, Inc. v. Walker, Case No. 2012AP2067 (Wis. Sup. Ct.), oral arg. at 01:14:46 (available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=8148).

[28] The Commissioners' statutory mandate requires that all certification elections in a given year for general municipal public school employees "shall occur no later than December 1." Wis. Stat. § 111.70(4)(d)3.

[29] See Madison Teachers, Inc. v. Walker, Case No. 2012AP2067 (Wis. Sup. Ct.), Affidavit of Peter G. Davis, Chief Legal Counsel for the Wisconsin Employment Relations Commission, at 2.

[30] The statutes authorize WERC only to create "proper rules . . . to regulate the conduct of all elections . . . ." Wis. Stat. § 111.09(1).

23

by August 30 if procedures do not commence by November 5, 2013.[31] That date has come and gone.

¶88 Pursuant to the statutory language requiring that elections "shall occur no later than December 1,"[32] must elections begin by December 1 or end by December 1? The Commissioners' counsel's affidavit further states that "[i]f the elections are not held as scheduled (or at least completed during a 20 calendar day period ending December 1, 2013), compliance with the statutory mandate is not possible."[33] There are not 20 calendar days before December 1.[34]

¶89 If the affidavits are true, can elections take place by the statutory date? If not, will every collective bargaining

---

[31] See Madison Teachers, Inc. v. Walker, Case No. 2013AP2405 (Wis. Ct. App.), Affidavit of Peter G. Davis, Chief Legal Counsel for the Wisconsin Employment Relations Commission, at 6.

[32] Wis. Stat. § 111.70(4)(d)3.

[33] See Madison Teachers, Inc. v. Walker, Case No. 2012AP2067 (Wis. Sup. Ct.), Affidavit of Peter G. Davis, Chief Legal Counsel for the Wisconsin Employment Relations Commission, at 4 (Oct. 25, 2013). "For the elections to take place in accordance with the statutory directive, but not as scheduled, the Commissioners must be able to resume administering and enforcing the emergency rules and statute no later than November 5, 2013."

[34] The elections must provide sufficient prior notice in order to meet constitutional due process requirements. See, e.g., R.J. Reynolds Employees Ass'n v. N.L.R.B., 61 F. Supp. 280 (M.D.N.C. 1943) (ruling that four days was not sufficient notice for a union election); Hall-Brooke Hosp., 267 N.L.R.B. 909 (Aug. 26, 1983) (finding that same-day and incomplete notice invalidated election results).

24

agent requiring recertification be automatically recertified this year?[35]

¶90 At oral argument, WERC's counsel left open the question of how the elections might or might not take place, when elections could occur, or what disputes might result from a rushed election process.[36]

---

[35] WERC has previously suspended elections pursuant to a court order pending an appeal. See Rule Summary, EmR 1310 (noting "the Commissioners' . . . determination to suspend the conduct of such elections . . . until the federal court litigation was concluded").

[36] The Commissioners' counsel provided scant detail about how these elections could occur if their time constraints are such as they state in their affidavits:

> We could tell you with certainty when we moved that if we got the order by November 5, that we'd be able to conduct elections by the first, but I'm afraid I cannot say with certainty what the Commission's decision will be if, say, the order came down on the 15th. But if you back up dates, an election could certainly commence by December 1st, if an order were issued, doing some math, by the 20th or the 21st. But the Commission has to meet in order to make that decision.

Madison Teachers, Inc. v. Walker, Case No. 2012AP2067 (Wis. Sup. Ct.), oral arg. at 1:26:48-1:27:47 (available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=8148). The Commissioners' counsel additionally failed to indicate what procedures might be used regarding voter rolls and notices:

> The Commission will have to make a decision based on the court's order as to what to do, but one option is to use what has already been in place before an injunction or a contempt was issued and rely on those. They may decide if it were consistent with this court's order to restart the process. That's a decision they'll have to meet about and make a decision about based on what this court does.

(continued)

25

¶91 Third: How does this order affect the appeal of the contempt ruling currently pending at the court of appeals? Because the per curiam opinion is issued under case number 2012AP2067, it is unclear what effect it necessarily has on case number 2013AP2405, which addresses the contempt order specifically. Additional briefing remains pending at the court of appeals.

¶92 The court's order today fails to grapple with these unknown practical and legal implications. The per curiam reaches its result. Satisfied, the opinion foregoes any consideration of the collateral damage it has wrought.

¶93 For all of the reasons set forth above, we respectfully dissent.

---

Id. at 01:13:42-01:14:03.